IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

PATRICK D. LEGGETT;
KATHERINE F. LEGGETT;
GEORGE D. MCKAIN, by his
attorney in fact, ANITA
KATHRYN MCKAIN GREER;
and ADELE S. MCDOUGAL,

          Plaintiffs,

v.                                      Civil Action No. 1:13-cv-0004 FPS
                                      Honorable Frederick P. Stamp, Jr.

EQT PRODUCTION COMPANY,
a Pennsylvania corporation;
EQT CORPORATION,
a Pennsylvania corporation;
EQT ENERGY, LLC, a
Delaware limited liability company;
EQT INVESTMENTS HOLDINGS, LLC, a
Delaware limited liability company;
EQT GATHERING, LLC, a
Delaware limited liability company; and
EQT MIDSTREAM PARTNERS, LP,
a Delaware limited partnership,

          Defendants.

## <u>AMENDED COMPLAINT</u>

Now come the plaintiffs and for their Amended Complaint against the defendants allege and aver as follows:

1.     Plaintiffs, Patrick D. Leggett, Katherine F. Leggett, George D. McKain, by his attorney in fact, Anita Kathryn McKain Greer, and Adele S. McDougal, are all owners of undivided interests in certain oil and natural gas mineral interests lying and

being in Southwest District, Doddridge County, West Virginia, containing 2000 acres, more or less, said interests described generally in lease dated October 31, 1906, and recorded in the Office of the Clerk of the County Commission of Doddridge County, West Virginia at Deed Book 21, Page 76, and referred to by defendants as Equitable Lease No. 109481 (Jackson Leeson).

2.     Plaintiffs Patrick Leggett and Katherine Leggett, who reside in Charleston, Kanawha County, West Virginia, are the owners of 12.5% undivided interest in the aforesaid minerals.

3.     Plaintiff Anita Kathryn McKain Greer is the duly appointed attorney in fact of plaintiff George D. McKain, who resides in Houston, Texas, and who owns a 12.5% undivided interest in and to the aforesaid oil and gas mineral property.

4.     Plaintiff Adele S. McDougal, who resides in Harrisville, Ritchie County, West Virginia, owns a 50% undivided interest in and to the aforesaid oil and gas mineral property.

5.     Defendant EQT Corporation (hereinafter "EQT") conducts its business through three business segments, defendant EQT Production Company and defendant EQT Midstream Partners, LP.  EQT Production Company (hereinafter "Production") is one of the largest natural gas producers in the Appalachian Basin.  EQT Midstream Partners, LP ("EQT Midstream") provides gathering, transmission and storage services. EQT distributes its gas through a regulated subsidiary, Equitable Gas Company, LLC.

6.     EQT Corporation owns and operates various companies and businesses

which provide gathering systems for transporting of natural gas from gas wells owned and operated by defendants on leases in West Virginia to the point of sale, including EQT Gathering, LLC, EQT Midstream Partners, LP, and EQT Investments Holdings, LLC (hereinafter collectively referred to as "EQT Gathering Subsidiaries").

7.      EQT Corporation also created a subsidiary known as EQT Energy, LLC, which purchases natural gas from defendants EQT Corporation and EQT Production.

8.      At all times herein, EQT Energy, LLC (hereinafter "EQT Energy"), was and is a Delaware limited liability company authorized to conduct business in West Virginia.

9.      EQT Investments Holdings, LLC ("EQT Investments") is a Delaware limited liability company.

10.     EQT Gathering, LLC ("EQT Gathering") is a Delaware limited liability company authorized to conduct business in West Virginia.

11.     EQT Midstream Partners, LP ("EQT Midstream") is a Delaware limited partnership authorized to conduct business in West Virginia.

12.     At all times complained of herein, EQT was a Pennsylvania corporation whose principal place of business was at 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania, 15222, licensed to do business in West Virginia, in the business of the management of companies and enterprises including "Production."

13.     At all times complained of herein, EQT Production Company was and is a Pennsylvania corporation whose principal place of business was at 625 Liberty Avenue,

Suite 1700, Pittsburgh, Pennsylvania, 15222, and was licensed to do business in West Virginia, whose business included mining and oil and gas extraction.

14.     EQT Corporation (hereinafter "EQT") and EQT Production Company (hereinafter "Production"), by and through their predecessors, subsidiaries and/or partners, leased properties and acquired the leases of properties in West Virginia and prior to and during the times complained of herein said corporations acquired the leases and rights as lessee of plaintiffs' mineral interests in oil and gas on the property as described above.

15.     Upon information and belief, during the times complained of herein, when EQT and its predecessors owned Production and its subsidiaries:

a.     EQT owned all of the stock of Production.

b.     EQT had common officers and/or directors with Production.

c.     EQT financed and/or controlled the finances of Production, including its loans.

d.     EQT, acting by and through its departments' other subsidiaries, which it owns, operates and controls, including Production, arranges for payment of or security for Production's indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries.

e.     Except for sale of oil and gas and its products, Production does business primarily with EQT and its other subsidiaries.

      f.      EQT's subsidiaries' assets are under the control of EQT.

      g.     EQT publicly refers to its subsidiaries as business segments and states that it conducts its business, which includes Production, through three business segments.

      h.     Upon information and belief, the officers and/or directors of Production take direction from EQT for the interest of EQT.

      i.       EQT manages its daily operations through Production and its subsidiaries.

      j.       EQT's assets consist primarily of the assets of its subsidiaries.

      k.     EQT finances its subsidiaries and guarantees repayment of its subsidiaries' debt.

16.     At all times complained of herein, EQT owned, operated and controlled Production, the same as if the said corporation was a department of the same, and EQT was and is the alter ego of said defendant.

17.     At all times complained of herein, defendant Production was acting for and on behalf of EQT, and EQT was the alter ego of Production, and EQT is responsible for the acts and conduct of Production which is complained of in this complaint the same as if EQT did the acts complained of.

18.     At all times complained of herein, EQT was acting for and on its own behalf and by and through its agents, servants and employees and also by and through its agent, Production.

19.     Upon information and belief, during the times complained of herein, when EQT and its predecessors owned EQT Energy and its subsidiaries:

a.      EQT owned all of the stock of EQT Energy.

b.      EQT had common officers and/or directors with EQT Energy.

c.      EQT financed and/or controlled the finances of EQT Energy, including its loans.

d.      EQT, acting by and through its departments' other subsidiaries, which it owns, operates and controls, including EQT Energy, arranges for payment of or security for EQT Energy's indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries.

e.      Except for sale of oil and gas and its products, EQT Energy does business primarily with EQT and its other subsidiaries.

f.      EQT's subsidiaries' assets are under the control of EQT.

g.      EQT publicly refers to its subsidiaries as business segments and states that it conducts its business, which includes EQT Energy, through three business segments.

h.      Upon information and belief, the officers and/or directors of EQT Energy take direction from EQT for the interest of EQT.

i.      EQT manages its daily operations through EQT Energy and its subsidiaries.

j.      EQT's assets consist primarily of the assets of its subsidiaries.

k.      EQT finances its subsidiaries and guarantees repayment of its subsidiaries' debt.

20.    At all times complained of herein, EQT owned, operated and controlled EQT Energy, the same as if the said corporation was a department of the same, and EQT was and is the alter ego of said defendant.

21.    At all times complained of herein, defendant EQT Energy was acting for and on behalf of EQT, and EQT was the alter ego of EQT Energy, and EQT is responsible for the acts and conduct of EQT Energy which is complained of in this amended complaint the same as if EQT did the acts complained of.

22.    At all times complained of herein, EQT was acting for and on its own behalf and by and through its agents, servants and employees and also by and through its agent, EQT Energy.

23.    Upon information and belief, during the times complained of herein, when EQT and its predecessors owned EQT Gathering Subsidiaries and its subsidiaries:

a.      EQT owned all of the stock of EQT Gathering Subsidiaries.

b.      EQT had common officers and/or directors with EQT Gathering Subsidiaries.

c.      EQT financed and/or controlled the finances of EQT Gathering Subsidiaries, including its loans.

d.      EQT, acting by and through its departments' other subsidiaries,

which it owns, operates and controls, including EQT Gathering Subsidiaries, arranges for payment of or security for EQT Gathering Subsidiaries' indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries.

e.     Except for sale of oil and gas and its products, EQT Gathering Subsidiaries do business primarily with EQT and its other subsidiaries.

f.     EQT's subsidiaries' assets are under the control of EQT.

g.     EQT publicly refers to its subsidiaries as business segments and states that it conducts its business, which includes EQT Gathering Subsidiaries, through three business segments.

h.     Upon information and belief, the officers and/or directors of EQT Gathering Subsidiaries take direction from EQT for the interest of EQT.

i.     EQT manages its daily operations through EQT Gathering Subsidiaries and its subsidiaries.

j.     EQT's assets consist primarily of the assets of its subsidiaries.

k.     EQT finances its subsidiaries and guarantees repayment of its subsidiaries' debt.

24.     At all times complained of herein, EQT owned, operated and controlled EQT Gathering Subsidiaries, the same as if the said corporation was a department of the

same, and EQT was and is the alter ego of said defendant.

25.     At all times complained of herein, defendant EQT Gathering Subsidiaries was acting for and on behalf of EQT, and EQT was the alter ego of EQT Gathering Subsidiaries, and EQT is responsible for the acts and conduct of EQT Gathering Subsidiaries which is complained of in this amended complaint the same as if EQT did the acts complained of.

26.     At all times complained of herein, EQT was acting for and on its own behalf and by and through its agents, servants and employees and also by and through its agent, EQT Gathering Subsidiaries.

27.     At all times complained of herein, EQT was engaged in a joint venture with Production, EQT Energy and EQT Gathering Subsidiaries and other subsidiaries to lease, explore, develop, produce, market, transport and sell oil and gas from West Virginia properties.

28.     At all times complained of herein, EQT, Production, and the other defendants and other subsidiaries were lessees of oil and gas leases throughout West Virginia, including the plaintiffs' interests above, and each defendant was and is obligated by duties under said leases to, among other duties and responsibilities, pay plaintiffs the amounts required pursuant to the laws of the State of West Virginia.

29.     EQT and/or its subsidiaries entered into a Settlement Agreement with certain royalty owners on January 23, 2009, to pay certain royalty owners and the class for past royalty due, however, EQT continues to take deductions from plaintiffs' royalty

which is contrary to their leases and/or as required by law and has failed and refused to pay plaintiffs herein for all the royalty due them.

30.     Contrary to their contractual, legal, statutory and common law duties and responsibilities, EQT, Production, and/or defendants' subsidiaries and/or defendants' other subsidiaries have and continue to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduces plaintiffs' royalty on volume and/or price and/or by taking unauthorized deductions.

31.     Upon information and belief, defendants directly and/or indirectly converted plaintiffs' natural gas to liquids and sold the liquids for money without compensating plaintiffs for said liquids.

32.     EQT Corporation and/or EQT Production, the defendants' subsidiaries and other subsidiaries undertook a design and plan to continue to avoid payment to lessors, like plaintiffs, all of the royalty due them by establishing various subsidiaries for the purpose of selling its gas and charging off to lessors the expenses which the law of West Virginia does not allow unless the lease specifically provides for the same and then only when the amounts deducted are reasonable and actually incurred.

33.     EQT Corporation, EQT Production, contrary to their duty and responsibility, intentionally and in violation of West Virginia state law sold gas to EQT Energy, EQT Corporation and EQT Production, and directly or indirectly paid EQT Gathering Subsidiaries for gathering and other charges which were not permitted to be

taken from plaintiffs' royalty, all for the purpose of not paying plaintiffs the true and exact royalty that the law of West Virginia provides that they are entitled to.

34.     Defendant EQT Gathering Subsidiaries and EQT Energy acted in concert and by plan and design charged EQT and Production and/or other subsidiaries of the latter for the deductions by charging back the costs for transporting the plaintiffs' gas to the point of sale, and EQT Energy purchased and sold plaintiffs' gas in order to reduce plaintiffs' royalty while it knew or should have known these charges were being deducted for and paid for by plaintiffs out of the amount defendants owed to plaintiffs for royalty.   Therefore, EQT Gathering Subsidiaries and EQT Energy are liable to plaintiffs for the difference in the amount of royalty plaintiffs received and the amount plaintiffs were entitled to receive as a result of said subsidiaries' wrongful acts and omissions.

35.     Defendants have not paid to plaintiffs the royalties as required pursuant to said leases, and continue to not pay plaintiffs the royalty to which they are entitled.

36.     Defendants have and continue to report to the West Virginia State Tax Department moneys for royalties which plaintiffs have not received, thereby wrongfully increasing plaintiffs' taxes on moneys actually deducted and kept by defendants.

37.     While not having the right to charge plaintiffs with costs and unilaterally deducting same from their payments, defendants charged plaintiffs with costs and charges which were unreasonably excessive and unlawful and which amounted at

times to as much as approximately 25% to 30% of the total amount of royalty due and owing to plaintiffs.

38.     Defendants had an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of W. Va. Code Ann. § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts, and by virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes the duty of handling the sales and accounting functions of the parties.

39.     As part of the legal responsibilities of defendants, they agreed to and/or had the duty to account for all of the sales of gas from said wells and to accurately account for said wells and to act as a fiduciary for plaintiffs' moneys owed to plaintiffs as a result of royalties due to plaintiffs.

40.     Defendants violated said fiduciary responsibility.

41.     Defendants intentionally violated their contractual duty to plaintiffs.

42.     Defendants concealed, suppressed, and omitted material facts with intent that plaintiffs would rely upon same in connection with the bases for charging plaintiffs for specific services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs' royalties and deductions therefrom.

43.     Plaintiffs relied upon defendants to truly, accurately, and properly carry out its contractual and fiduciary duties and responsibilities and to account to plaintiffs for payments due to plaintiffs and for any material deductions or reductions in royalty.

44.     As a result of the aforesaid conduct of defendants, plaintiffs were damaged in that they were deprived of and are owed royalty payments from defendants and are owed interest from said deficiencies in said royalty payments.

45.     The acts and conduct of defendants were willful and wanton and in utter disregard of plaintiffs' rights.

46.     At all times complained of herein, defendants were acting for and on their own behalf and as agents, ostensible agents, servants and/or employees of others in the course and scope of their employment, agency and/or ostensible agency.

47.     At all times complained of herein, defendants were acting as conspirators with unnamed persons, firms, and corporations in common goals, schemes, and designs for the goals and purposes as herein alleged and complained of.

48.     At all times complained of herein, defendants entered into a joint venture with others and with unnamed persons, firms and corporations for the goals and purposes as herein alleged and complained.

49.     As a proximate result of defendants' and each of their acts and omissions complained of herein, plaintiffs were damaged since January 23, 2009, as follows:

a.     Defendants failed to pay them the amount of money due and owed them at the time due.

b.     Plaintiffs lost the use of the money due and owing them pursuant to the defendants' conduct.

c.     Plaintiffs have been annoyed, inconvenienced and incurred

unnecessary costs, expenses and taxation as a consequence of defendants' acts and conduct.

## COUNT I

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

50.     Defendants violated and breached their contractual duties and responsibilities to plaintiffs, and each of them, and plaintiffs were damaged as set out above.

51.     Plaintiffs are entitled to recover all the rents and royalties and other damages which they have been deprived by defendants' breach of contract.

## COUNT II

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

52.     Defendants violated their fiduciary duties and responsibilities to plaintiffs as aforesaid, and plaintiffs were damaged as aforesaid.

53.     Plaintiffs are entitled to be paid their rents and royalties and other damages as described above.

## COUNT III

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

54.     Defendants misrepresented to plaintiffs that defendants were entitled to

take deductions from plaintiffs' royalty, take the amount of deductions they took, reduced plaintiffs' royalty payments, overcharged plaintiffs for services, and/or wrongfully claimed plaintiffs' royalty due was less than the amount actually due, thereby denying plaintiffs the rents and royalties to which they were due.

55.     Plaintiffs relied and are required to rely on the defendants for the honest accounting and lawful payments to plaintiffs of royalty owed to them on an ongoing basis.

56.     Plaintiffs were damaged as a result of defendants' knowing and unlawful acts and omissions in continuing to take deductions from plaintiffs' royalties, failing to pay plaintiffs the fair value of money owed to them for the gas at the point of sale and by defendants taking their money and using it for themselves.

57.     As a proximate result of the wrongful, knowing and fraudulent acts and omissions of defendants, plaintiffs were damaged as aforesaid.

## <u>COUNT IV</u>

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

58.     The actions of defendants named in this "Amended Complaint" as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs, entitling the plaintiffs to punitive damages for all causes of action alleged herein.  In particular, defendants entered into a plan and design to take portions of plaintiffs' royalties, to which defendants were not entitled, and use them for their

own business purposes, including the sale of plaintiffs' gas to a subsidiary at less than the value at the point of sale, deducting from plaintiffs' royalty amounts paid to defendants' subsidiaries for transporting and processing the gas to the "point of sale," and for failure to pay plaintiffs for portions of their gas which were sold separately for liquids without compensating plaintiffs.

## **PRAYER**

WHEREFORE, plaintiffs demand that they be awarded damages and equitable and affirmative relief against defendants, jointly and/or severally, as follows:

a.   Compensatory damages and punitive damages in an amount to be determined by the Court and jury;

b.   Damages as provided for under and pursuant to W. Va. Code Ann. §§ 46A-6-101, *et seq.*, including compensatory and punitive damages and equitable and injunctive relief;

c.   The costs and disbursements of this action, including attorney fees;

d.   Prejudgment and post-judgment interest;

e.   Equitable and injunctive relief, including requiring an accounting and order requiring plaintiffs to be properly paid; and

f.   For such other further and general relief, compensatory, punitive, equitable, or injunctive, as the Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.

PATRICK D. LEGGETT;
KATHERINE F. LEGGETT;
GEORGE D. MCKAIN, by his
attorney in fact, ANITA
KATHRYN MCKAIN GREER;
and ADELE S. MCDOUGAL

By Counsel

/s/ Marvin W.  Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
304-342-3106

Michael W. Carey
West Virginia State Bar No. 635
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street East, Suite 901
Charleston, West Virginia  25301
304-345-1234

Counsel for Plaintiffs
F:\5\864\p005.docx

17

## CERTIFICATE OF SERVICE

I, Marvin W. Masters, hereby certify that on May 9, 2014, I electronically filed "Amended Complaint" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

David K. Hendrickson
Carl L. Fletcher, Jr.
Hendrickson & Long PLLC
214 Capitol Street
Post Office Box 11070
Charleston, West Virginia  25339
daveh@handl.com
cfletcher@handl.com
Counsel for Defendants

Michael W. Carey
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street East, Suite 901
Charleston, West Virginia  25301
mwcarey@csdlawfirm.com
Counsel for Adele S. McDougal

/s/ Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, WV  25301
304-342-3106
mwm@themasterslawfirm.com