**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

KATHERINE F. LEGGETT, Executrix of
the Estate of Patrick D. Leggett, et al.,

    **Plaintiffs,**      Civil Action No.  1:13-cv-00004FPS
               (Hon. Frederick P. Stamp, Jr.)

**v.**

**EQT PRODUCTION COMPANY, et al.,**

    **Defendants.**

**DEFENDANT EQT CORPORATION'S MOTION FOR PROTECTIVE
ORDER AND MOTION TO QUASH PLAINTIFFS' NOTICE OF VIDEO
DEPOSITION OF STEVEN T. SCHLOTTERBECK AND NOTICE OF VIDEO
DEPOSITION OF DAVID L. PORGES WITH SUPPORTING MEMORANDUM**

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, Defendant EQT

Corporation, by counsel, moves the Court for an Order precluding Plaintiffs from proceeding

with the depositions of David L. Porges and Steven T. Schlotterbeck.  *See* Exh. A, Notices of

Deposition.  David L. Porges is the current interim President and Chief Executive Officer of

EQT Corporation and Steven T. Schlotterbeck is a former President and Chief Executive Officer

of EQT Corporation.[1]  Plaintiffs' attempt to depose these gentlemen at this advanced stage in the

litigation is a thinly veiled attempt to harass and inconvenience both them and EQT Corporation

in order to create undue burden and unfair leverage on Defendants.

Based upon prior rulings made by this Court, the remaining issues to be determined in

this case relate to whether post-production costs allocated to Plaintiffs were actually incurred and

---

[1] Mr. Schlotterbeck is no longer employed by EQT Corporation.

reasonable in their amount.  The intent to harass Messrs. Porges and Schlotterbeck as well as EQT Corporation is apparent by the fact that Plaintiffs have failed to identify the purpose for which they seek to depose these gentlemen at this late stage of discovery.  The issue of whether post-production costs were actually incurred by EQT Production Company, as lessee, and reasonable in their amount are not facts that either Mr. Porges or Mr. Schlotterbeck would have unique personal knowledge of as the President and Chief Executive Officer of EQT Corporation. Indeed, no witness has suggested that either of these gentlemen is the person best suited to answer any question posed by Plaintiffs in this litigation.  Plaintiffs have also offered no valid reason as to why the depositions of the present and former highest-ranking officer of EQT Corporation are necessary or relevant to the issues remaining for trial.  As current and former high ranking "apex" corporate executives having multi-faceted responsibilities for the overall operations and conduct of EQT Corporation, Messrs. Schlotterbeck and Porges are entitled to protection from these unnecessary depositions because: (1) they have no unique or superior first-hand knowledge regarding Plaintiffs' claims in this litigation; and, (2) the information Plaintiffs seek is obtainable and/or has been obtained from other, less burdensome sources, such as the numerous current and former employees already deposed and responsible for the day-to-day actives involving Defendants' businesses and operations that are relevant to this case.

As discussed more fully below in the supporting Memorandum, because the depositions of Messrs. Schlotterbeck and Porges are unnecessary, duplicative, and unduly burdensome, Defendant requests that this Court enter a Protective Order precluding those depositions as provided by Rule 26(c)(1) of the Federal Rules of Civil Procedure. Counsel for Defendant certifies that they have in good faith conferred with Plaintiffs' counsel in an effort to resolve this dispute without the necessity of filing this Motion.  Counsel further states that they previously

advised counsel for Plaintiffs that they are unavailable on either of the dates identified in Plaintiffs' Notices of Deposition.

## ARGUMENT

### A.    The Scope of Discovery Under Rule 26

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the general scope of discovery as follows:

> … any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery and resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.   Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

Rule 26(b)(2) concomitantly compels this Court to "limit the frequency or extent of discovery otherwise allowed" if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action; or the burden or expense of the proposed discovery outweighs its likely benefit . . ." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Additionally, Federal Rule of Civil Procedure 26(c) allows this Court to issue a protective order to prevent an "undue burden or expense" upon the parties or upon the deponent. Rule 26(c) provides that this Court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the discovery or prescribing a discovery method other than the one selected by the party seeking discovery.

These limitations on the frequency and extent of discovery are further emphasized by the mandate in Rule 26(g) which directs that an attorney or party serving discovery requests certifies that the request is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."  Fed. R. Civ. P. 26(g).

Thus, the Federal Rules of Civil Procedure allow the parties to engage in discovery relevant to any party's claim or defense, but only within limits.  First, the discovery must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Second, the discovery sought cannot be "unreasonably cumulative or duplicative," or able to "be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Third, the "burden or expense of the proposed discovery" must not outweigh "its likely benefit …" and may be restricted or prohibited when necessary to protect a person or party from annoyance, oppression, or undue burden.  *Id.*

Here, where the depositions sought are unreasonably cumulative and duplicative of information which can be (and has been) obtained more conveniently and less burdensomely from another source, upon the filing of a motion for protective order or on its own, the Court is required to limit the extent of discovery.  Fed. R. Civ. P. 26(b)(2)(C).

**B.    Messrs. Porges and Schlotterbeck Are Apex Corporate Executives Entitled To Protection From Unnecessary Depositions**

As current and former Presidents and Chief Executive Officers of EQT Corporation, Messrs. Porges and Schlotterbeck should not be subjected to unnecessary and burdensome depositions when other employees of the Defendant companies can provide - and have already

provided – the information that Plaintiffs presumably seek.  Courts have generally restricted parties from deposing high-ranking corporate officials because, by virtue of their position, these individuals "are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts."  *Brown v. Branch Banking & Trust Co.*, 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014)[2] (*quoting In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)). Accordingly, when a party seeks to take the deposition of an executive "at the highest level or 'apex' of the corporation, the Court may take measures under the federal rules to limit discovery to avoid the tremendous potential for abuse or harassment."  *JTH Tax, Inc. v. Aime*, 2:16cv279, 2016 WL 9223926, at *5 (E.D. Va. 2016) (citation omitted).[3]  The "apex doctrine" provides "an aid to ensure 'that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.' "  *Id.*, at *5, *quoting*, *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12cv525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) (citing *Performance*

---

[2] Copies of unreported cases are attached collectively as Exh. B.

[3] *See also, In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776 (S.D.W. Va. 2014) (recognizing that "an effective way to harass and abuse a large multinational corporation in litigation is to notice the deposition of one of its high-level executives" and applying the "proportionality principles of Rule 26(b)(2)(C)" in considering a motion to preclude the deposition of a company president); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) (upholding protective order in a wrongful death action against a drug manufacturer that barred the deposition of the defendant's president because he was extremely busy and lacked direct knowledge of facts in dispute, and other employees had more direct knowledge); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming district court grant of protective order prohibiting deposition of CEO); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 484 (10th Cir. 1995) (upholding protective order prohibiting deposition of senior executive where lower level employees were available for deposition and where senior executive lacked personal knowledge of case); *Celebrity v. Ultra Clean Holding, Inc.*, No. C 05–4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse and harassment.").

*Sales & Mktg. LLC v. Lowe's Co., Inc.*, 2012 WL 4061680, at *3–4 (W.D.N.C. Sept. 14, 2012).

In order to combat the potential for abuse and harassment associated with deposing high-level company officials, courts - including several District Courts within the Fourth Circuit - have imposed a high burden that must be met before allowing "apex depositions":

> [T]he apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1). Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition.

*Performance Sales & Marketing LLC v. Lowes Companies, Inc.*, No. 5:07–CV–00140, 2012 WL 4061680, at * 4 (W.D.N.C. Sept. 14, 2012).

To overcome the presumption that depositions of high-ranking corporate executives are violative of Rule 26(b)(2)(C)'s proportionality standard and/or proper for a protective order, and "before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show: (1) the executive has unique or special knowledge of the facts at issue; and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014).[4] If the information sought from a corporate executive can be or has been obtained from

---

[4] Other federal courts have applied a similar presumption when parties attempt to depose high-ranking executives. *See e.g., Ford Motor Co. v. Edgewood Properties, Inc.*, CIV. 06-1278, 2011 WL 2517133, at *3 (D.N.J. June 23, 2011) ("courts in this circuit consider two factors when assessing whether the deposition of a high-ranking corporate officer, executive, or manger is appropriate); *Wal–Mart Stores, Inc. v. Vidalakis*, No. 5:07–CV–39, 2007 WL 4591569, at *1 (W.D. Ark. Dec. 28, 2007) ("before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted."); *Ford Motor; Carnival Corp. v. Rolls–Royce PLC*, No. 08–23318–CIV, 2010 WL 1644959, at *3 (S.D. Fla. Apr.22, 2010) ("An officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactory through less intrusive means."); *Bicek v. C & S Wholesale Grocers, Inc.*, No. 2:13–cv–0411–MCE–KJN, 2013 WL 5425345, at *4 (E.D. Cal. Sept.27, 2013) ("[P]arties

lower-level employees or through less burdensome means such as interrogatories or Rule 30(b)(6) corporate depositions, the deposition should not be permitted to proceed. *See*, *Reif v. CNA*, 248 F.R.D. 448,451 (E.D. Pa. 2008); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334-35 (M.D. Ala. 1991). *See also*, *Folwell v. Hernandez*, 210 F.R.D. 169, 174 (M.D.N.C. 2002) (recognizing that "the oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case.").

The U.S. District Court for the Southern District of West Virginia's discussion of the "apex doctrine" in *In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776 (S.D.W. Va. 2014)[5], is instructive. There, the defendant manufacturer sought to prohibit or limit the deposition of the defendant's president in multidistrict litigation involving surgical mesh products. Finding "good cause to limit the scope of the deposition to matters that are not cumulative, duplicative, available through other sources, irrelevant, or inflammatory"[6], the court reasoned as follows:

> Regardless of whether or not the apex doctrine is adopted in the Fourth Circuit, the issues surrounding Plaintiffs' notice to depose John Weiland can be resolved by considering the proportionality principles of Rule 26(b)(2)(C). From the standpoint of convenience and burdensomeness, it clearly is difficult for the President and COO of a company the size of Bard to find time for a deposition. Weiland testifies to these facts in his affidavit, indicating that his position with Bard places extraordinary demands on his time, so much so that the earliest date on which he can sit for a full day of testimony is August 27, 2014. (ECF No. 901-1 at 5). Moreover, while Weiland is participating in the deposition, it is unlikely

seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.").

[5] *See* Exh. C.

[6] Unlike the facts here, the court in *Bard* found that the president had personal knowledge and involvement in significant activities involving the defendant company's distribution and quality control of the product at issue, and limited the deposition to those general topics. *Id*. at *5.

that another employee will be capable of covering his duties and obligations. Therefore, to justify the deposition, Weiland must be able to supply relevant information that has not and cannot be easily obtained through other witnesses, a document production, or interrogatories. Similarly, Weiland should not have to submit to a deposition that is cumulative or duplicative. According to Bard, Plaintiffs have already deposed forty Bard employees. More importantly, Plaintiffs have deposed all of the employees with the most specific and technical information regarding the design, development, manufacturing, and marketing of the pelvic mesh products, unquestionably crucial issues in the case. Plaintiffs have not shown that Weiland has any different or additional information on any of these key points. Therefore, Plaintiffs should not be permitted to question Weiland about technical issues related to the design, development, manufacturing, and marketing of the mesh products.

*Id*. at *5.

Here, no question exists that Messrs. Schlotterbeck and Porges are high-ranking or "apex" corporate executives for whom Plaintiffs should bear the burden of demonstrating that their depositions are necessary. *See e.g. In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776, at *3 (S.D.W. Va. 2014); *Smithfield Bus. Park, LLC v. SLR Int'l Corp*., 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014); *Performance Sales & Marketing LLC v. Lowes Companies, Inc*., No. 5:07–CV–00140, 2012 WL 4061680, at * 4 (W.D.N.C. Sept. 14, 2012).  Because Plaintiffs cannot show that either of these gentlemen has unique knowledge of the facts at issue and that other less burdensome avenues for obtaining the information have been exhausted, Plaintiffs should not be permitted to depose Mr. Schlotterbeck or Mr. Porges.

**C.     Neither Mr. Porges nor Mr. Schlotterbeck Possesses Unique Or Superior Knowledge Regarding The Claims At Issue In This Litigation And Their Testimony Would Be Cumulative Of Testimony Provided By Employees Of Other Defendants**

As Plaintiffs are aware, Messrs. Porges and Schlotterbeck are, respectively, the current interim and former President and Chief Executive Officer of EQT Corporation.   Neither of them has unique personal knowledge about the facts, allegations, or issues that are the subject of this lawsuit.   Rather, other employees and officers of the Defendant companies possess personal

knowledge and information relating to these matters. Any relevant knowledge that these gentlemen have regarding facts that are the subject of this case was received second-hand through internal reports and meetings, and other memoranda and communications from other employees and officers of EQT Corporation or the other Defendant companies. Their position as President and Chief Executive Officer of EQT Corporation is/was one of management at the highest level of the corporation. Functioning in this capacity makes it practically impossible for either of them to know the details of EQT Corporation's subsidiaries' day-to-day activities. While these gentlemen have received periodic reports and other information from representatives with actual involvement and responsibility for each of the subsidiary businesses, neither of them had a role in the day-to-day activities involving the production, sale, or gathering of natural gas from EQT Production Company's lease premises, or the calculation and payment of royalties to lessors. Rather, witnesses already deposed by Plaintiffs have the personal knowledge that Plaintiffs seek, and the knowledge of Messrs. Schlotterbeck and Porges is neither unique nor superior.

In fact, current and former employees of Defendants have already testified at length about the issues that are the subject of this case. Plaintiffs have deposed, for example, employees directly involved in day-to-day activities involving EQT Production Company's calculation and payment of royalties to lessors; purchases and sales of natural gas and other hydrocarbon products; cost of service rates for gathering and compressing natural gas from the wells to the point of sale; the formula and manner by which gathering and other costs are incurred by EQT Production Company; and the organization and operations of the various EQT-affiliated businesses. Plaintiffs served several Rule 30(b)(6) deposition notices on Defendants, covering over 40 separate subject matters. These deposition topics cover every category of information

relating to the claims of the parties in this case. *See* Exh. D, Plaintiffs' F.R.C.P. 30(b)(6) Notice to Depose All Defendants.   In total, Plaintiffs have taken 14 depositions of numerous high-ranking employees of several Defendants, including the following:

- Jimmi Sue Smith, Chief Accounting Officer, EQT Corporation (2 days)

- John Bergonzi, Former Vice President of Finance and Controller for EQT Corporation  (2 days)

- Kristy Toia, Director of Revenue Accounting for EQT Production Company

- Bruce Grabiec, Director of Operations for EQT Corporation

- Joe Piccirilli, Director of Planning Analysis for EQT Midstream

- Nicole King, Corporate Secretary and a staff attorney for EQT Corporation

- Justin Friend, Manager Gas Systems Planning, Gas Systems Analysis for EQT Gathering, LLC

- Wayne Bowman, Regional Land Manager for EQT Production Company

- Mike Barbour, Division Order Supervisor for EQT Production Company

- Troy Larkin, Vice President, Trading and Asset Management for EQT Energy, LLC

- Alma Tolman, Accountant-Principal Land Analyst for EQT Corporation

- Michael Lancaster, Former IT Manager for EQT Production Company

- Lloyd Johnson, Assistant Controller, EQT Gathering.

In addition, Plaintiffs have noticed additional 30(b)(6) Depositions for all Defendants. This Notice of Depositions asks that Defendants produce witnesses competent to testify about lease amendments or modifications and/or pooling agreements that contain language relating to the lessee's right to allocate post-production costs and expenses. *See* Exh. E.

The individuals already deposed by Plaintiffs are best suited to address, and have addressed, the issues that are the subject of Plaintiffs' claims in this case.   Any limited

information that Messrs. Schlotterbeck or Porges may have would be cumulative or duplicative of information provided in other depositions or in the hundreds of responses to discovery requests answered by Defendants.

Plaintiffs cannot satisfy their burden of showing that the deposition of either Mr. Porges or Mr. Schlotterbeck is necessary or that the knowledge of either of these gentlemen on any issue relevant to the parties' claims in this case is superior or unique. *See, Smithfield*, 2014 WL 547078, at *2 (precluding executive deposition where information may be obtainable via 30(b)(6) deposition of company); *Evans v. Allstate Ins. Co*., 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting protective order to prohibit depositions of top executive officers because defendant "already provided adequate information, or that the information can alternately be obtained from other sources without deposing these "apex" officers"). No witness has suggested that either of these gentlemen has particular knowledge regarding any fact at issue in this litigation. Plaintiffs' attempt to depose Messrs. Schlotterbeck and Porges at this advanced stage in this litigation serves no purpose other than to harass and inconvenience. Indeed, the deposition notices provide no information on the subjects or topics about which Plaintiffs seek to depose these gentlemen. Nor have Plaintiffs offered any explanation as to what relevant information either of these gentlemen is believed to have that is unique or superior to other EQT employees and officers involved in the day-to-day matters that relate to the issues involving post-production costs for gathering and compression, calculation of royalty payments, or the question of whether the costs allocated to Plaintiffs were actually incurred or reasonable in their amount. Plaintiffs' notices of deposition are, therefore, an attempt at an impermissible fishing expedition and effort to harass high-ranking EQT Corporation executives in order to create undue burden and unfair leverage on Defendants, none of which is a proper purpose of discovery under the

Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26.  Accordingly, Plaintiffs should be required to undertake other, less burdensome and intrusive means to obtain the (unspecified) discovery that they purportedly seek via depositions of Mr. Schlotterbeck and Mr. Porges.  It would be premature for Plaintiffs' to depose the gentlemen before Plaintiffs even endeavor to obtain the information they seek from lower-level employees.  The entry of a Protective Order is proper, therefore, unless or until Plaintiffs are able to show that whatever information they seek from these gentlemen cannot be obtained in a less intrusive and burdensome manner.  *See e.g., Reif*, 248 F.R.D. at 454 ("[Plaintiff] must demonstrate the insufficiency of interrogatories or the depositions of the lower level employees before obtaining a deposition of [defendant CEO]); *First Fid. Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., CIV. A. 90-1866, 1992 WL 46881, at *4 (E.D. Pa. Mar. 5, 1992) (before deposing executive officials, party must first "either attempt to obtain the information from written depositions or by written interrogatories."); *Baine*, 141 F.R.D. at 335 (deposing corporate executive "would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from [other corporate employees], interrogatories, or the corporate deposition").  .

## CONCLUSION

For the reasons stated herein and to be argued upon oral argument, Defendant respectfully requests that the Court enter a protective order, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, precluding Plaintiffs from proceeding with the depositions of Steven T. Schlotterbeck and David L. Porges served July 24, 2018.

**EQT CORPORATION,**

**By Counsel.**

*/s/  David K. Hendrickson*                  *08/06/2018*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (facsimile)
daveh@handl.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

KATHERINE F. LEGGETT, Executrix of
the Estate of Patrick D. Leggett, et al.,

    **Plaintiffs,**      Civil Action No.  1:13-cv-00004FPS
               (Hon. Frederick P. Stamp, Jr.)

v.

EQT PRODUCTION COMPANY, et al.,

    **Defendants.**

## CERTIFICATE OF SERVICE

  I, David K. Hendrickson, counsel for Defendants, do hereby certify that on the **6th day of August,  2018**, I have served the foregoing **"DEFENDANT EQT CORPORATION'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' NOTICE OF VIDEO DEPOSITION OF STEVEN T. SCHLOTTERBECK AND NOTICE OF VIDEO DEPOSITION OF DAVID L. PORGES WITH SUPPORTING MEMORANDUM"** using the Court's CM/ECF filing system which will deliver a true copy thereof to counsel of record listed below:

Marvin W. Masters, Esquire (#2359)   Michael W. Carey, Esquire (#635)
THE MASTERS LAW FIRM, LC      CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
181 Summers Street         Suite 901
Charleston, West Virginia   25301   707 Virginia Street East
*Counsel for Plaintiffs*       Charleston, West Virginia  25301
               *Counsel for Plaintiffs*

        ***/s/  David K. Hendrickson  08/06/2018***
        David K. Hendrickson, Esquire (#1678)
        **HENDRICKSON & LONG, PLLC**
        214 Capitol Street (zip 25301)
        P.O. Box 11070
        Charleston, West Virginia 25339
        (304) 346-5500
        (304) 346-5515 (fax)
        daveh@handl.com