IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

KATHERINE F. LEGGETT, individually
and as Executrix of the Estate of Patrick
D. Leggett; GEORGE D. MCKAIN, by his
attorney in fact, ANITA
KATHRYN MCKAIN GREER;
and ADELE S. MCDOUGAL,

           Plaintiffs,

v.                                            Civil Action No. 1:13-cv-0004 FPS
                                            Honorable Frederick P. Stamp, Jr.

EQT PRODUCTION COMPANY,
a Pennsylvania corporation;
EQT CORPORATION,
a Pennsylvania corporation;
EQT ENERGY, LLC, a
Delaware limited liability company;
EQT INVESTMENTS HOLDINGS, LLC, a
Delaware limited liability company;
EQT GATHERING, LLC, a
Delaware limited liability company; and
EQT MIDSTREAM PARTNERS, LP,
a Delaware limited partnership,

           Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER AND TO QUASH**

Now come plaintiffs for response to defendants' motion for protective order and motion

to quash plaintiffs' notice of video deposition of Steven T. Schlotterbeck and Notice of Video

Deposition of David L. Porges with Supporting Memorandum (Doc. Id. 244.)[1] Defendants claim

that plaintiffs' notice to depose Mr. Porges and Mr. Schlotterbeck "is a thinly veiled attempt to

harass and inconvenience both of them and EQT Corporation in order to create an undue burden

and unfair leverage on defendants."  (Doc. Id. 244, p. 1.)  Defendants also claim that the only

_____

[1] Defendants have not offered any other witnesses to replace Mr. Porges or Mr. Schlotterbeck.  Plaintiffs'
proposed moving the depositions to a different date and doing it at a place satisfactory to defendants.

"remaining issues to be determined in this case relate to whether post-production costs allocated to plaintiffs were actually incurred and reasonable." *Id.*[2]   Defendants fault plaintiffs for not identifying in the notice the purpose for which plaintiffs seek to depose these witnesses. Plaintiffs address this issue below.  Defendants claim that Mr. Porges and Mr. Schlotterbeck cannot be deposed because:

1.   they have no unique or superior firsthand knowledge regarding Plaintiffs' claims in this litigation; and

2.   the information Plaintiffs seek is obtainable and/or has been obtained from other, less burdensome sources, such as the numerous current and former employees already deposed and responsible for the day-to-day actives involving Defendants' businesses and operations that are relevant to this case.

Plaintiffs disagree with both of these points.  Mr. Porges and Mr. Schlotterbeck are corporate officers and directors of EQT Corporation.  The Court in *The Kay Company, et al. v. EQT Production Company, et al.*, Civil Action No. 13-cv-151 ruled as follows:

This Court finds that EQT Corporation does own, operate and control its business segments. Its business segments have corporation or LLC behind their names but are not real companies, but follow their parent's orders and directions. Subsidiary officers and employees cannot act independently and must coordinate their activities for EQT Corporation as captive corporations who are required to perform for the parent.

(*Id.*, Doc. Id. 400, p. 50.)

The Court also noted as follows:

The Court notes that in filings on August 8 and 18, 2017, the defendants represented that: (a) Steven T. Schlotterbeck was the Chief Executive Officer of all defendants, (b) that each subsidiary has a president who reports to Mr. Schlotterbeck; (c) and that none of the subsidiaries employs a lawyer - EQT Corporation provides legal counsel as a "shared service." [Docs. 386 & 392]

(*Id.*, Doc. Id. 400, p. 44.)

And as the Court stated in its finding that common questions predominate in this case:

---

[2] Plaintiffs disagree.  There are numerous liability and damage issues in this case including post production expenses.

The liability phase of this case presents the following issues, which are common to all potential class members:

(1) Is EQT the alter ego of the other subsidiaries and, therefore, liable as a result, is it liable as a result of its own misconduct or by virtue of a fraudulent scheme or joint venture?

(2) Did defendants breach their contractual duties, implied or otherwise, to plaintiffs and the classes?

(3) Are the deductions proper and reasonable under West Virginia law?

(4) Did the defendants provide a "method for calculating" the costs to be deducted?"

(5) Are defendants entitled to any of the deductions based upon *Tawney*?

(6) Are plaintiffs and the class entitled to payment from the volume at the wellhead?

(7) Did the defendants fraudulently charge plaintiffs for the deductions?

(8) Did the defendants intentionally and maliciously over-charge plaintiffs for deductions?

(9) Are plaintiffs entitled to punitive damages?

The common questions discussed above predominate. The resolution of these issues will largely dispose of this litigation.

(*Id*., Doc. Id. 400, pp. 24-25.)

Plaintiffs have deposed numerous EQT employees and discovered their knowledge with respect to details of data, documents, deductions and royalty payments that EQT has made over the years from 2008, to January 2018.  However, none of the witnesses produced by defendants were decision-makers.  They testified that they simply followed procedures that others had adopted or provided to them.  Plaintiffs have attempted to obtain the testimony of EQT Corporation.  Some of the witnesses, by counsel, testified on behalf of EQT Corporation but none were decision-makers like the proposed deponents and none could address all the issues outlined by the Court as common to all potential class members on behalf of EQT.

Plaintiffs have a right to discover EQT Corporation and its board of directors and officers' knowledge in order to understand the parents' involvement with respect to a number of issues.  EQT Corporation actually charges a large amount of overhead to royalty owners.  It is disingenuous for defendants to claim that they have produced witnesses for the parent when they

recently sent a letter outlining all EQT deponents and indicating that none were produced for the parent, EQT Corporation, **Exhibit 2**. While this is not true since defendants had previously indicated that some of the EQT defendants' 30(b)(6) deponents were testifying on behalf of all defendants, including the parent, still none had the knowledge of these two witnesses. I assume now, however, defendants have decided to claim previous witnesses were not offered for EQT Corporation.

The subject witnesses have personal information for most, if not all, relevant periods of time for the class action. Attached as **Exhibit 1** are portions of SEC 10K filings with respect to officers and board members. Based on their positions, the witnesses certainly possess knowledge and information relevant to EQT Corporation and its subsidiaries' acts in this case.

Defendants have <u>not</u> produced a witness who has the knowledge which Mr. Porges or Mr. Schlotterbeck possess. Plaintiffs are entitled to take their depositions with respect to the parents' involvement and decisions with respect to the royalty payments and deductions taken in this case. Mr. Porges and Mr. Schlotterbeck were on the Board of Directors of EQT and were officers during the relevant time periods. They both have personal knowledge of EQT Corporation's and subsidiaries' actions and bases for paying royalty and taking deductions in this case.

**David L. Porges**

| | |
|---|---|
| 2008 | President, Chief Operating Officer and Director of EQT Corporation |
| 2009 | President, Chief Operating Officer and Director of EQT Corporation |
| 2010 | President, Chief Executive Officer and Director of EQT Corporation |
| 2011 | Chairman, President, Chief Executive Officer and Director of EQT Corporation |
| 2012 | Chairman, President, and Chief Executive Officer of EQT Corporation |
| 2013 | Chairman, President, Chief Executive Officer and Director of EQT Corporation |
| 2014 | Chairman, President, Chief Executive Officer of EQT Corporation |
| 2015 | Chairman and Chief Executive Officer of EQT Corporation |
| 2016 | Chairman and Chief Executive Officer of EQT Corporation |
| 2017 | Executive Chairman of EQT Corporation |

**Steven T. Schlotterbeck**

| 2008 | Vice President of EQT, President Production |
| 2009 | Vice President of EQT, President Production |
| 2010 | Senior Vice President of EQT, President Exploration and Production |
| 2011 | Senior Vice President of EQT, President Exploration and Production |
| 2012 | Senior Vice President of EQT, President Exploration and Production |
| 2013 | Executive Vice President EQT, President Exploration and Production |
| 2014 | Executive Vice President EQT, President Exploration and Production |
| 2015 | President EQT Corporation, President Exploration and Production |
| 2016 | Director of EQT Corporation |
| 2017 | President, Chief Executive Officer and Director of EQT Corporation |

For whatever reason, defendants filed as exhibits notices for F.R.C.P. 30(b)(6) witness depositions served in 2014 and 2015 and not the most recent which was served on April 9, 2018. EQT Corporation was, however, served with a Rule 30(b)(6) notice to appear on May 7, 2018,[3] and to continue the deposition through May 11, 2018.  (**Exhibit 3**, *Id.*, Doc. Id. 509, and Notice pp. 1-2.)  The latter notice was served after plaintiff obtained additional documents and data in 2018.  The discovery plan included depositions of all defendants and EQT Corporation, but as explained above, defendants have tried to sidestep EQT Corporation's involvement in discovery. In this case, defendants have not demonstrated that Mr. Porges and Mr. Schlotterbeck do not have knowledge which is relevant and/or discoverable in this case, nor have defendants explained why they have not provided EQT Corporation's designated witnesses in this case, even though a notice was served on defendant.  Now on the one hand, EQT claims it has provided other witnesses, but on the other, it claims it has not.  (See **Exhibit 2**.)

The Fourth Circuit has not adopted the apex doctrine and this Court need not apply the doctrine to decide the present motion.  The issues presented in this motion can be resolved by considering Federal Rule of Civil Procedure 26 and applicable case law.  In general, a party is

---

[3] Plaintiffs served 30(b)(6) notices on EQT Corporation going back to 2015, however, Defendants claim that plaintiffs have not advised them what subject matter  plaintiffs desire to question the witnesses about.

entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). The discovery rules, including Rule 26, "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando,* 441 U.S. 153, 17, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

Rule 26(b)(2) allows the court to limit the frequency of discovery when: it is "unreasonably cumulative;" "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" the party seeking the discovery has had ample opportunity to obtain the information; or the "burden or expense of the proposed discovery outweighs its likely benefit…" Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii). Under Rule 26(c) discovery may be restricted or prohibited when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense.

> Under Fed.R.Civ.P. 26(c)(1)(B), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ... specifying terms, including time and place, for the disclosure or discovery." The party moving for a protective order bears the burden of establishing good cause. *Ayers v. Cont'l Cas. Co.,* 240 F.R.D. 216, 221 (N.D.W.Va.2007); *see also Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 124 (D.Md.2009). In so doing, the moving party "may not rely upon 'stereotyped and conclusory statements.' " *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D.Md.2006) (quoting 8A Charles Alan Wright et al., *Fed Prac. & Proc. Civ.* § 2035 (2d ed.1994)). Instead, the movant "must present a 'particular and specific demonstration of fact' as to why a protective order should issue. *Id.* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.' " *Id.* (quoting *Merit Indus., Inc. v. Feuer,* 201 F.R.D. 382, 384–85 (E.D.P:a.2001); *see also Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C.1987). Therefore, "the standard for issuance of a protective order is high." *Minter,* 258 F.R.D. at 125; *see also Natanzon,* 240 F .R.D. at 202 (noting that Rule 26(c)'s requirement of good cause "creates a rather high hurdle" for the moving party).

*Smith v. Valmet, Inc.,* No. 1:13-CV-266, 2014 WL 4954648, at *2 (N.D.W. Va. Oct. 2, 2014).

While Rules 26(b)(2)(C) and 26(c) allow for broad discretion when determining whether to limit discovery, protective orders "'should be sparingly used and cautiously granted.'" *Small v.*

*Ramsey,* 280 F.R.D. 264, 268-69 (N.D.W. Va. 2012) (citing *Medlin v. Andrew,* 113 F.R.D. 650,

652). *See also,* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2037 (1994) (citing

in part *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of

good cause and extraordinary circumstances, a court should not prohibit altogether the taking of

a deposition.")); 10 Fed. Proc., L.Ed. § 26:191 (an "order to vacate a notice of taking of

deposition is generally regarded by the courts as both unusual and unfavored").

> A court's customary reluctance to constrain discovery is heightened in the case of a
> motion seeking to prevent the taking of a deposition. *Minter,* 258 F.R.D. at 125 (citing
> *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C.
> 2001))("By requesting the Court to prohibit plaintiff from deposing a witness, defendant
> ... assumes a heavy burden because protective orders which totally prohibit a deposition
> should be rarely granted absent extraordinary circumstances."). The reason for this is
> fundamental. Usually, the subject matter of a deposition is not well-defined in advance;
> thus, the need for prospective relief is more difficult to establish than in other methods of
> discovery. In addition, "a motion can be made if any need for protection emerges during
> the course of the examination;" therefore, a ruling prior to commencement of the
> deposition is not necessary to achieve a fair resolution. 8 Wright & Miller, *Federal
> Practice and Procedure*, § 2037 (3d Ed.). Consequently, the burden to show good cause
> for an order prohibiting the taking of a deposition is especially heavy. *Medlin,* 113 F.R.D.
> at 653; *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong
> showing of good cause and extraordinary circumstances, a court should not prohibit
> altogether the taking of a deposition.")

*In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.,* No. MDL 2187, 2014 WL 12703776,

at *3 (S.D.W. Va. June 30, 2014).  "A prohibition against the taking of an oral deposition is a

very unusual procedure and a party who seeks a protective order prohibiting such a deposition

bears a heavy burden of demonstrating good cause for such an order." *Armstrong v. MGC

Mortg., Inc.*, No. 1:09-CV-00131, 2010 WL 3835703, at *2 (N.D.W. Va. Sept. 28, 2010)( *citing

8 Wright & Miller, Federal Practice and Procedure,* § 2037 (1986 Sup.)); *CBS, Inc. v. Ahern,*

102 F.R.D. 820 (S.D.N.Y.1984).

Even under the apex doctrine, which the Court need not consider here, high-ranking

corporate executives are not exempt from being deposed, and instead are excused from giving

testimony only in compelling circumstances. *Thomson v. Zillow, In*c., 51 Misc. 3d 1050, 32 N.Y.S.3d 455 (N.Y. Sup 2016).  "[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition.  Nor in ordinary circumstances, … does it matter that the proposed witness… professes lack of knowledge of the matters at issue, as the party seeking discovery is entitled to test the asserted lack of knowledge." *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D. N.Y. 1997).  A party seeking to prevent the deposition of a high-ranking corporate executive carries a heavy burden to show why discovery should be denied, and absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition. *Medimmune, LLC v. PDL Biopharma, Inc.,* No. C08-05590 JF (HRL), 2010 WL 2640473, at *1 (N.D. Cal. June 30, 2010).

Further, the apex doctrine is not applicable here because it conflicts with the Federal Rules of Civil Procedure and shifts the burden to the party seeking discovery. *See , i.e.,  Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, ¶ 17, 174 P.3d 996, 1004, *as corrected* (Oct. 10, 2007). For other courts refusing to adopt the apex doctrine, see, for example, *State ex rel Ford Motor Company v. Messina,* 71 S.W.3d 602, 607 (Mo.2002); *Citigroup, Inc. v. Holtsberg,* 915 So.2d 1265, 1269-70 (Fla.App. 2005); *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602 606-07 (Mo. 2002) (en banc).  Furthermore, the concerns underlying the apex doctrine are lessened where numerous litigants are involved in an action such as a class action.  *See, i.e., In re C.R.Bard, supra,* at *12 ("The rationale behind the apex doctrine is that, without the required showing, high-level executives will be exposed to repetitive, abusive, and harassing depositions. That concern is not present here."); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.,* 205 F.R.D. 535, 536 (S.D. Ind. 2002) (holding that the court was "unwilling ... to require rigid adherence to the burdens imposed" by the apex doctrine where knowledge at the highest

corporate levels may be relevant and the coordinated deposition procedures in an MDL "discourage numerous, repetitive, harassing or abusive depositions").   Moreover,   proposed deponents are not "apex officials" entitled to protection under the apex doctrine, where the undisputed facts show that the deponents have personal knowledge relating to the issues in the case. *Intelligent Verification Sys., LLC v. Microsoft Corp.,* No. 2:12CV525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014).

Finally, even courts that consider the apex doctrine require the moving party to submit evidence or an affidavit from the executive stating that he or she lacks superior or unique knowledge of the relevant facts, and the burden then shifts to the proponent to demonstrate the executive's likely knowledge and to show that less burdensome discovery methods have been or will be unsatisfactory, insufficient or inadequate. *See Performance Sales & Marketing LLC v. Lowe's Companies, Inc.,* No. 5:07 CV 00140 RLV, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012).

The discovery of these two witnesses is not cumulative.   Plaintiffs chose these two because they provide the least intrusive options to testify concerning the 10 year class period. Defendants have not attempted to produce EQT Corporation's decision-maker witnesses. Defendants have not demonstrated any good cause to grant a protective order or a motion to quash, let alone, a strong showing or extraordinary circumstances.   Therefore, the Court should deny the motion.

## Conclusion

Defendants, having failed in demonstrating a basis for its proposed protective order and motion to quash, the motion should be denied and the witnesses should be required to be

produced by EQT within 10 days and or other reasonable times for their depositions and for such

other general relief as the Court deems just and propr.

KATHERINE F. LEGGETT, et al.

By Counsel

/s/ Michael W. Carey
Michael W. Carey
West Virginia State Bar No. 635
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street, East, Suite 901
Charleston, West Virginia  25301

/s/ Marvin W. Masters
West Virginia State Bar No. 2359
Richard A. Monahan
West Virginia State Bar No. 6489
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301

Counsel for Plaintiffs
F:\5\864\b017.docx

10

## CERTIFICATE OF SERVICE

I, Marvin W. Masters, hereby certify that on August 8, 2018, I electronically filed "Plaintiffs' Response to Defendants' Motion for Protective Order and to Quash" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> David K. Hendrickson
> Carl L. Fletcher, Jr.
> Hendrickson & Long PLLC
> 214 Capitol Street
> Post Office Box 11070
> Charleston, West Virginia  25339
> daveh@handl.com
> cfletcher@handl.com
> Counsel for Defendants

> /s/ Marvin W. Masters
> West Virginia State Bar No. 2359
> Richard A. Monahan
> West Virginia State Bar No. 6489
> The Masters Law Firm lc
> 181 Summers Street
> Charleston, West Virginia  25301
> 304-342-3106
> mwm@themasterslawfirm.com
> ram@themasterslawfirm.com