**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

THE KAY COMPANY, LLC, et al.,

      **Plaintiffs,**

v.                                   **CIVIL ACTION NO. 1:13-CV-151
(Hon. John Preston Bailey)**

EQT PRODUCTION COMPANY, et al.,

      **Defendants.**

*and*

PATRICK D. LEGGETT, et al.,

      **Plaintiffs,**                         **CIVIL ACTION NO. 1:13-cv-4
(Hon. Frederick P. Stamp, Jr.)**

v.

EQT PRODUCTION COMPANY, et al.,

      **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANT
EQT CORPORATION'S OBJECTIONS TO MAGISTRATE
<u>JUDGE'S RULINGS AND ORDER DATED AUGUST 9, 2018</u>**

Defendant EQT Corporation and its counsel Hendrickson & Long, PLLC and Steptoe & Johnson, PLLC" (collectively "EQT") submit this Memorandum in support of their Objections to the Magistrate Judge's Order entered on August 9, 2018.  The Order that is the subject of Defendant's Objections relates to "Defendant EQT Corporation's Motion for Protective Order and Motion to Quash Plaintiffs' Notice of Video Deposition of Steven T. Schlotterbeck and Notice of Video Deposition of David L. Porges" (ECF 543) (the "Motion").

The Magistrate Judge's ruling directing "Mr. Porges, Mr. Schlotterbeck, all Counsel of record for all Defendants, and the Chief Executive Officers of Hendrickson & Long, PLLC and Steptoe & Johnson, PLLC" to show cause[1] as to why sanctions should not be awarded was improper and clearly erroneous:

- David L. Porges did not file the Motion that is the subject of the Magistrate Judge's Order.

- The Motion was filed solely by Defendant EQT.

- All counsel were aware that the dates set forth in the Notices had been deemed unworkable due to conflicting schedules and that the depositions would not be going forward as requested in those Notices. Therefore, Mr. Porges was not advised that he must attend a deposition because no date and time had been agreed upon.

- Mr. Porges did not fail to appear for any properly noticed deposition and, at no time, has he refused to appear. In fact, pursuant to the parties' agreement and the Magistrate Judge's Order allowing the parties to agree to dates alternative to those provided in the Order, Mr. Porges' deposition was conducted on August 22, 2018.

- The grounds for EQT's Motion were substantially justified by applicable facts and law.

There is no valid basis upon which to sanction a witness, individual attorneys, and the attorneys' law firms for EQT's filing of the Motion. Moreover, the Magistrate Judge's statements regarding the Defendants and their counsel reflects, at the very least, the appearance of bias against parties to this Court and their lawyers that could impair the ability to receive a fair hearing.

In further support of its Objections, Defendant submits the following Memorandum:

## SUMMARY OF FACTS

Defendant EQT Corporation moved the Court for an order to prevent Plaintiffs from proceeding with the depositions of David L. Porges and Steven T. Schlotterbeck as set forth in

---

[1] In a subsequent Order, the Magistrate Judge excused Mr. Schlotterbeck from attending the hearing originally set by the Order and directed that Mr. Schlotterbeck is no longer subject to sanctions. [ECF 558].

the Plaintiffs' Notices of Deposition served on July 24, 2018.[2] David L. Porges is the current interim President and Chief Executive Officer of EQT Corporation and Steven T. Schlotterbeck is a former President and Chief Executive Officer of EQT Corporation. As EQT Corporation has pointed out to Plaintiffs and the Magistrate Judge, Mr. Schlotterbeck is no longer employed by EQT Corporation and is not subject to its control. Plaintiffs did not issue a subpoena to Mr. Schlotterbeck until *after* the Court's hearing on EQT Corporation's motion.

According to representations made by counsel for Plaintiffs at the hearing held on August 9, 2018, they sought to depose Messrs. Schlotterbeck and Porges to inquire whether either of these gentlemen has personal knowledge of how the decision was made to calculate the royalties paid to lessees by EQT Production Company and to allocate or deduct post-production costs.

As presented to the Court at the August 9, 2018, hearing, Plaintiffs previously deposed John Bergonzi, Former Vice President of Finance and Controller for EQT Corporation, for two days, at which time Mr. Bergonzi testified at length about how royalties are calculated, how post-production costs for gathering and compression services are allocated, and why/how the decisions were made regarding these calculations and cost allocations. *See* Exh. A, Bergonzi Tr., dated July 19, 2016, pp. 40-44; 86-87; and Exh. B, Bergonzi Tr., August 17-18, 2015, pp. 23-27.

Also deposed on these subjects were: Jimmi Sue Smith, Chief Accounting Officer, EQT Corporation (2 days); Kristy Toia, Director of Revenue Accounting for EQT Production Company; Bruce Grabiec, Director of Operations for EQT Corporation; Joe Piccirilli, Director of Planning Analysis for EQT Midstream; and, Nicole King, Corporate Secretary and a staff attorney for EQT Corporation.

---

[2] Defendant's Motion was referred to Magistrate Judge James E. Seibert for hearing and a ruling in both of the above-referenced cases. Defendant's Motion was referred to Magistrate Judge Seibert in the *Leggett* case pursuant to the Order of Reference entered by the Hon. Frederick P. Stamp, Jr. on Aug. 9, 2018. (*Leggett*, ECF 249).

Neither Mr. Schlotterbeck nor Mr. Porges has unique personal knowledge about the facts, allegations, or issues relating to the subjects upon which Plaintiffs contend they seek to depose these gentlemen. Rather, other employees and officers of the Defendant companies possess personal knowledge and information relating to these matters. Any relevant knowledge that these gentlemen may have regarding facts that are the subject of this case was received through communications from other employees and officers of EQT Corporation, outside counsel, or the other Defendant companies. Their position as President and Chief Executive Officer of EQT Corporation is/was one of management at the highest level of the corporation. Functioning in this capacity makes it practically impossible for either of them to know the details of EQT Corporation's subsidiaries' day-to-day activities. While these gentlemen have received periodic reports and other information from representatives with actual involvement and responsibility for each of the subsidiary businesses, neither of them had a role in the day-to-day activities involving the calculation and payment of royalties to lessors. Rather, witnesses already deposed by Plaintiffs have the personal knowledge that Plaintiffs seek, and the knowledge of Messrs. Schlotterbeck and Porges is neither unique nor superior. Plaintiffs have provided no evidence to the contrary.

Because current and former employees of Defendants have already testified at length about the issues upon which Plaintiffs state that they seek to depose Messrs. Schlotterbeck and Porges, and to avoid undue burden and unnecessary inconvenience, Defendant filed the subject Motion seeking to prohibit the depositions of these gentlemen. The parties appeared by their respective counsel before Magistrate Judge James E. Seibert for a hearing on Defendants' Motion on August 9, 2018. The Court entered the Order later on that same date requiring Messrs. Porges and Schlotterbeck to appear for deposition on August 13 and 14, respectively,

unless the parties can agree to an alternative time and place.[3] The parties have agreed to conduct the depositions at an alternative time and place and those depositions have now occurred. However, the Magistrate Judge also ordered that a hearing should be held to allow "Mr. Porges, Mr. Schlotterbeck, all Counsel of record for all Defendants, and the Chief Executive Officers of Hendrickson & Long, PLLC and Steptoe & Johnson, PLLC … an opportunity to be heard on why reasonable expenses AND SANCTIONS should not be awarded." (ECF 553).[4] Subsequent to the entry of the August 9, 2018, Order, this Court vacated that portion of the Order which required the appearance of "Defendants, their CEO's, their lawyers and their lawyers' law firms" at the hearing originally set for August 22, 2018, and agreed to permit them to file "written memorand[a] by August 23, 2018" and "an opportunity to be heard in person … on August 24, 2018" if anyone "prefers to appear in person as opposed to submitting a written memorand[um]." (ECF 563).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(a) provides that a "party may serve and file objections to [a nondispositive order] within 14 days after being served with a copy … The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a). "Clearly erroneous" and "contrary to law" are not synonymous. *See e.g. HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12–cv–00668, 2014 WL 317820, at *6–7 (S.D.W. Va. Jan. 28, 2014); *Patrick v. PHH Mortgage Corp.*, 298 F.R.D. 333, 335-336 (N.D.W. Va. 2014). While the Rules of Civil Procedure provide magistrate judges with broad discretion in resolving discovery disputes, a magistrate judge's "finding is

---

[3] This Order went so far as to direct when, where, and how the depositions were to proceed, including the timing and length of breaks in the depositions.

[4] In a subsequent Order, the Magistrate Judge excused Mr. Schlotterbeck from attending the hearing and directed that he is no longer subject to sanctions. [ECF 558].

'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Clark v. Milam*, 155 F.R.D. 546, 547 (S.D.W. Va. 1994) quoting, *United States v. United States Gypsum*, 333 U.S. 364, 395 (1948).  Accord, Patrick, 298 F.R.D. at 335-336.

Conversely, when review of "a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard'." *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12–cv–00668, 2014 WL 317820, at *6–7 (S.D.W. Va. Jan. 28, 2014).  Accordingly, "for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard" and a District Court should conduct a de novo review of a Magistrate Judge's legal conclusions to determine if they are contrary to law.  *Id.*  Accord, *Clay v. Consol Pennsylvania Coal Co., LLC*, No. 5:12cv92, 2013 WL 4854746, at *2 (N.D.W. Va. Sept. 11, 2013).

## ARGUMENT

A.  **Any award of sanctions against Mr. Porges would be clearly erroneous and contrary to law.**

Expenses and sanctions should not be awarded against Mr. Porges because: (1) he was unaware of the deposition and EQT Corporation's Motion; and, (2) EQT Corporation's motion was not frivolous.  The Motion for Protective Order that is the subject of the Magistrate Judge's Order was filed solely by Defendant EQT Corporation.  Mr. Porges was not a party to this Motion and did not personally direct that this Motion be filed.  Prior to the filing of that Motion, Mr. Porges, in fact, did not have knowledge of the Notice of Deposition served by Plaintiffs. During communications between counsel for the parties, counsel for Plaintiffs advised that there were a number of depositions that he would still like to take.  On July 24, 2016, counsel sent the Notices of Deposition for Messrs. Porges and Schlotterbeck to counsel for Defendants.  In the

6

correspondence forwarding these Notices, counsel for Plaintiffs stated that he was agreeable to altering the time of the depositions assuming they were conducted within the discovery period. On, July 26, 2018, Counsel for EQT Corporation advised counsel for Plaintiffs that he was unavailable on either of the dates identified in Plaintiffs' Notices of Deposition.  Counsel for Plaintiffs subsequently advised again that he was willing to move the dates for the depositions. All counsel were aware that the dates set forth in the Notices had been deemed unworkable and that the depositions would not be going forward as requested in those Notices. Therefore, Mr. Porges was not advised that he must attend a deposition because no date and time had been agreed upon.

Plaintiffs were neither inconvenienced nor prejudiced by the time for filing Defendant's Motion.  They participated in a meet and confer conference and agreed to disagree on whether the depositions could occur.  Counsel for both parties knew that a deposition would not proceed on the date requested by Plaintiffs' Notice and that EQT would be filing a motion for protective order.  Mr. Porges did not fail to appear for any properly noticed deposition and, at no time, has he refused to appear.  In fact, pursuant to the parties' agreement and the Magistrate Judge's Order allowing the parties to agree to dates alternative to those provided in the Order, Mr. Schlotterbeck's deposition was conducted on August 21, 2018, and Mr. Porges' deposition was conducted on August 22, 2018.

Pursuant to Federal Rule of Civil Procedure 26(c)(3), the award of expenses related to a protective order are subject to Rule 37(a)(5). Rule 37(a)(5) provides that, if the Motion is Denied, "the court . . . must, after giving an opportunity to be heard, require the <u>movant, the attorney filing the motion, or both</u> to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. <u>But the court</u>

<u>must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust</u>." Fed. R. Civ. P. 37(a)(5). *Accord*, Fed. R. Civ. P. 37(b)(2). Thus, the expenses provision applies to the party or the party's attorney; not the deponent. Further, at no time did Mr. Porges fail to appear for any properly noticed deposition (he appeared on August 22, 2018) or fail to obey a discovery order in this case. *See* Fed. R. Civ. P. 37(b). Accordingly, there is no basis upon which to impose an award of sanctions or expenses against Mr. Porges.

**B.     Rule 37(d) Provides No Basis for Sanctions in this Case.**

Rule 37(d)(1)(A) provides that the "court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition …." Fed. R. Civ. P. 37.

As previously discussed, Mr. Porges did not fail to appear for any properly noticed deposition and, at no time, has he refused to appear.[5] Plaintiffs filed no motion to compel the attendance of Mr. Porges for deposition and, if fact, his deposition was taken by agreement of the parties on August 22, 2013.

EQT Corporation's Motion for Protective Order was filed after consultation and communication between counsel for the parties in which they sought to resolve disputed issues concerning the depositions of Messrs. Porges and Schlotterbeck. Plaintiffs' Notices of Deposition did not identify locations at which the witnesses were to appear. An award of sanctions under Rule 37(d) is proper only when a party fails to appear at his/her deposition after "being served with proper notice." Pursuant to Rule 30(b)(1), "[t]he notice must state the time

---

[5] To be clear, while Mr. Schlotterbeck in no longer subject to sanctions (ECF 558), he also did not fail to appear for any deposition and, at no time, did he refuse to appear. In fact, upon agreement of the parties, Mr. Schlotterbeck's deposition was conducted on August 21, 2018.

8

and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30. In this case, although Plaintiffs provided the date and time, Plaintiffs' failed to provide a specific location for either deposition. (ECF 530 and 531). The absence of a specific address where the depositions would take place made the Notices deficient. As these deposition notices were deficient, Mr. Schlotterbeck and Mr. Porges were not properly noticed for their respective depositions and an award of sanctions would not be proper.

Moreover, Plaintiffs' counsel was aware that the depositions would not take place as requested in those Notices due to scheduling conflicts with defense counsel and the disputed issues concerning Plaintiffs' need or right to take the depositions as discussed in EQT Corporation's Motion. Indeed, Rule 37(d)(2) provides that the pendency of a motion for a protective order may excuse an alleged failure to attend a deposition. The Rule states that "[a] failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, **unless the party failing to act has a pending motion for a protective order under Rule 26(c)**." Fed. R. Civ. P. 37(d)(2) (emphasis added). *See also*, *Amobi v. District of Columbia Dept. of Corrections*, 257 F.R.D. 8, 10-11 (D.C.D. 2009) (holding "Defendants' counsel's failure to appear for the 30(b)(6) deposition that was subject of the motion for a protective order is also not sanctionable under Rule 37 because defendants had a pending motion for a protective order"); and *Robinson v. Quicken Loans, Inc.*, 2013 WL 1776100 *3 (April 25, 2013) (holding that "[u]nless a motion for protective order is pending, '[a] failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable'"). In this case, pending before the Court was "Defendant EQT Corporation's Motion for Protective Order and Motion to Quash Plaintiffs' Notice of Video Deposition of Steven Schlotterbeck and Notice of Video Deposition of David L. Porges" (ECF 543). In light of all of these undisputed

facts, there is no valid basis upon which to award sanctions under Rule 37(d), and the Magistrate Judge's Order directing "Mr. Porges, Mr. Schlotterbeck, all Counsel of record for all Defendants, and the Chief Executive Officers of Hendrickson & Long, PLLC and Steptoe & Johnson, PLLC" to show cause as to why sanctions should not be awarded was improper and clearly erroneous.

**C.    EQT Corporation had a good faith basis for filing its Motion.**

Pursuant to Rule 37 of the Rules of Civil Procedure, when a party establishes that its position was substantially justified or that the circumstances otherwise make the award unjust, Rule 37 expressly states that the Court "must not" order the payment of expenses and attorney's fees.  Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).  Although Rule 37 does not define the term "substantially justified", its meaning has been developed and generally agreed upon through case law.  The Supreme Court, in interpreting the meaning of "substantially justified" in connection with the Equal Access to Justice Act, found the phrase to mean "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person."  487 U.S. 552, 566 (1988).  A party's conduct will be found to be "substantially justified" if it is a response to "a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Id*. at 565.  In the context, specifically, of discovery, it has been stated that "making a motion, or opposing a motion, is "'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule."  Wright, Miller, & Marcus, Federal Practice and Procedure: Civil 2d § 2288 (1994).  A party need not prevail or its position ultimately be deemed to be correct in order to be "substantially justified" in its conduct.

Here, in its Motion and at the hearing before the Magistrate Judge, Defendant presented facts and legal support to show that the depositions of its current interim and former Presidents

10

and Chief Executive Officers should be precluded as violative of the proportionality requirements of Rules 26(b)(1) and 26(b)(2)(C) of the Federal Rules of Civil Procedure, and the related protections provided by the "apex" doctrine.

The Federal Rules of Civil Procedure allow the parties to engage in discovery relevant to any party's claim or defense, but within certain limits: (1) the discovery must be "proportional to the needs of the case"; (2) the discovery sought cannot be "unreasonably cumulative or duplicative," or able to "be obtained from some other source that is more convenient, less burdensome, or less expensive"; and, (3) the "burden or expense of the proposed discovery" must not outweigh "its likely benefit …" and may be restricted or prohibited when necessary to protect a person or party from annoyance, oppression, or undue burden. Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(C), respectively. The "apex" doctrine is a "tool for guiding the Court's analysis in determining whether to limit discovery under Rule 26(b)(2)(C) because the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive." *United States ex rel. Galmines v. Novartis Pharmaceuticals Corporation*, Civil Action No. 06-3213, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015).

While the U.S. Court of Appeal for the Fourth Circuit has neither explicitly accepted nor rejected the "apex" doctrine, several District Courts within the Fourth Circuit have recognized the doctrine. *See e.g. In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776 (S.D.W. Va. 2014)[6] (recognizing that "an effective way to harass and abuse a large multinational corporation in litigation is to notice the deposition of one of its high-level executives" and applying the "proportionality principles of Rule 26(b)(2)(C)" in considering a motion to preclude the deposition of a company president); *Performance Sales &*

---

[6] Copies of unreported cases are attached collectively as Exh. C.

*Marketing LLC v. Lowes Companies, Inc.*, No. 5:07–CV–00140, 2012 WL 4061680, at * 4 (W.D.N.C. Sept. 14, 2012) (recognizing that that apex doctrine "is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)"); *JTH Tax, Inc. v. Aime*, 2:16cv279, 2016 WL 9223926, at *5 (E.D. Va. 2016) (recognizing that, when a party seeks to take the deposition of an executive "at the highest level or 'apex' of the corporation, the Court may take measures under the federal rules to limit discovery to avoid the tremendous potential for abuse or harassment").[7]

The apex doctrine begins with the assumption that depositions of high-ranking officers are harassing and unnecessary unless the officer possesses unique or superior knowledge on a particular relevant subject. For these reasons, the "doctrine instructs that a high-level executive may not be deposed unless the party seeking the deposition can show that '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.' " *JTH Tax, Inc. v. Aime*, 2:16cv279, 2016 WL 9223926, at *5 (E.D. Va. 2016), *citing*, *Performance Sales & Mktg. LLC v. Lowe's*

---

[7] *See also, Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) (upholding protective order in a wrongful death action against a drug manufacturer that barred the deposition of the defendant's president because he was extremely busy and lacked direct knowledge of facts in dispute, and other employees had more direct knowledge); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming district court grant of protective order prohibiting deposition of CEO); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 484 (10th Cir. 1995) (upholding protective order prohibiting deposition of senior executive where lower level employees were available for deposition and where senior executive lacked personal knowledge of case); *Celebrity v. Ultra Clean Holding, Inc.*, No. C 05–4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse and harassment.").

*Companies, Inc.,* No. 5:07–CV–00140–RLV, 2012 WL 4061680, at *2 (W.D.N.C. Sept. 14, 2012).

Defendant presented in its Motion and at the hearing information and evidence to show that neither Mr. Schlotterbeck nor Mr. Porges has unique or special knowledge of the facts at issue; and, that several witnesses - including John Bergonzi, Former Vice President of Finance and Controller for EQT Corporation, whose deposition transcript testimony was provided to the Court - have already testified at length about the topics upon which Plaintiffs seek to depose these gentlemen.  In fact, the depositions of Messrs. Porges and Schlotterbeck confirmed these facts.  The bulk of Plaintiffs' counsel's questions of these gentlemen at their depositions related to the subjects of corporate structure, SEC filings, and bonus payments, all topics that would have been best addressed by other witnesses.

Notwithstanding the fact that the parties had a genuine and reasonable dispute regarding whether Rule 26's discovery limitations and the "apex" doctrine should preclude the depositions of Messrs. Porges and Schlotterbeck, the Magistrate Judge directed Plaintiffs to submit an affidavit of expenses.  More troubling, however, is the fact that the Magistrate Judge ordered that Messrs. Porges, Schlotterbeck, all Counsel of record for all Defendants, and the Chief Executive Officers of Hendrickson & Long, PLLC and Steptoe & Johnson, PLLC, shall be given an opportunity to be heard on why reasonable expenses AND SANCTIONS should not be awarded and scheduled a hearing on the same.  Participants in litigation, including witnesses, lawyers, and law firms, should not be sanctioned or threatened with sanctions because a party to the litigation files a motion with a legitimate legal basis.

**D.     The Magistrate Judge's analysis was clearly erroneous.**

The Magistrate Judge clearly erred in finding that the "apex" doctrine is inapplicable to Defendant because it is not a multi-national corporation, but, rather, a small company. Neither the Plaintiffs nor the Court have provided any authority for the proposition that a party must be a multi-national corporation for the apex doctrine to apply. As the Court is aware, EQT Corporation, through its subsidiaries, is the largest producer of natural gas in the United States. It is also now the third largest gatherer of natural gas in the United States. As of June 1, 2018, there were over 75 different entities under the EQT umbrella.

Moreover, the size of the corporation is not the determinative factor in whether to apply the doctrine. Rather, the "apex" doctrine is applicable when the deposition notice demands "the appearance of high-level executives or high-ranking government officials. Developed to prevent a litigant from harassing or burdening a corporate or government adversary by taking depositions of its apex employees, the apex doctrine is both an expression of the proportionality requirement found at Federal Rule of Civil Procedure 26(b)(2)(C) and a presumption of good cause for a protective order under Federal Rule of Civil Procedure 26(c). *In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776, at *3 (S.D.W. Va. 2014), *quoting*, *Smithfield Business Park, LLC v. SLR International Corp.*, No. 5:12-cv-282-F, 2014 WL 547078, at *1 (E.D.N.C. Feb. 10, 2014).

As the current interim and former President and Chief Executive Officer of EQT Corporation, Messrs. Schlotterbeck and Porges are high-ranking or "apex" corporate executives for whom Plaintiffs should bear the burden of demonstrating that their depositions are necessary. *See e.g. In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation*, MDL No. 2187, 2014 WL 12703776, at *3 (S.D.W. Va. 2014); *Smithfield Bus. Park, LLC v. SLR Int'l*

*Corp.*, 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014); *Performance Sales & Marketing LLC v. Lowes Companies, Inc.*, No. 5:07–CV–00140, 2012 WL 4061680, at * 4 (W.D.N.C. Sept. 14, 2012). No witness has suggested that either of these gentlemen is the person best suited to answer any question concerning the subject upon which Plaintiffs' counsel contends he wishes to depose them. In fact, at the August 9, 2018, hearing, counsel admitted that he never asked any of the prior deponents whether Messrs. Schlotterbeck or Porges may have personal knowledge of information relating to how the decision was made to calculate the royalties paid to lessees by EQT Production Company and to allocate or deduct post-production costs.

Further, at the August 9, 2018, hearing, Defendant presented deposition testimony of John Bergonzi, former Vice President of Finance and Controller for EQT Corporation, who testified at length about how royalties are calculated, how post-production costs for gathering and compression services are allocated, and why/how the decisions were made regarding these calculations and cost allocations. *See* **Exh. A and B**. In particular, as evidenced by the transcript testimony offered at the hearing, Mr. Bergonzi testified that he was present for meetings at which it was decided to continue with the manner in which royalty deductions were taken that had been in place prior to and at the time of the acquisition of the leases. *See* **Exh. B**, pp. 23-24. Conversely, Plaintiffs offered no evidence to contest the testimony offered by Defendant or to show that Mr. Porges has unique or special knowledge that is not cumulative or duplicative of the information already provided to Plaintiffs. Simply put, the grounds and legal basis for EQT Corporation's Motion were supported by both facts and law.

There is, therefore, no valid basis for the Magistrate Judge's show cause order or upon which to award sanctions in this matter. There is a legitimate dispute on the issues here and the

Magistrate Judge's attempts to punish Defendants, their attorneys, and current and former employees reflects a bias which is confirmed by his statement that Defendants and their Counsel have no credibility with him. If such a statement is true, it would be in appropriate for the Magistrate Judge to consider sanctions when he will not objectively consider matters brought before him.

## CONCLUSION

For the foregoing reasons and those stated in Defendant's Motion with supporting Memorandum, Defendant submits that the Magistrate Judge's rulings with respect to Defendant's Motion must be set aside pursuant to Rule 72(a) as they are clearly erroneous and contrary to law.

        EQT CORPORATION,

        By Counsel.

*/s/ David K. Hendrickson       08/23/2018*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500
(304) 346-5515 (facsimile)

John Kevin West, Esquire (#13313) (pro hac vice)
**STEPTOE & JOHNSON PLLC**
Huntington Center
Suite 2200 / 41 South High Street
Columbus, Ohio 43215
(614) 458-9889; (614) 221-0952 (facsimile)

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

THE KAY COMPANY, LLC, et al.,

        **Plaintiffs,**

v.                                    **CIVIL ACTION NO. 1:13-CV-151**
                                       **(Hon. John Preston Bailey)**

EQT PRODUCTION COMPANY, et al.,

        **Defendants.**

*and*

PATRICK D. LEGGETT, et al.,

        **Plaintiffs,**                      **CIVIL ACTION NO. 1:13-cv-4**
                                       **(Hon. Frederick P. Stamp, Jr.)**

v.

EQT PRODUCTION COMPANY, et al.,

        **Defendants.**

## CERTIFICATE OF SERVICE

      I, David K. Hendrickson, counsel for Defendants, do hereby certify that on the **23rd day of August 2018**, a true and exact copy of "**MEMORANDUM IN SUPPORT OF DEFENDANT EQT CORPORATION'S OBJECTIONS TO MAGISTRATE JUDGE'S RULINGS AND ORDER DATED AUGUST 9, 2018, AND MOTION FOR STAY OF MAGISTRATE'S RULINGS AND HEARING ON EXPENSES**" was served upon counsel of record using the Court's CM/ECF system which will deliver true and exact copies to the following counsel of record:

Marvin W. Masters, Esquire (#2359)  
**THE MASTERS LAW FIRM, LC**  
181 Summers Street  
Charleston, West Virginia 25301  
*Counsel for Plaintiffs*

Michael W. Carey, Esquire (#635)  
**CAREY, SCOTT, DOUGLAS & KESSLER, PLLC**  
Suite 901  
707 Virginia Street East  
Charleston, West Virginia 25301  
*Counsel for Plaintiffs*

17

        ***/s/  David K. Hendrickson         08/23/2018***
        David K. Hendrickson, Esquire (#1678)
        **HENDRICKSON & LONG, PLLC**
        214 Capitol Street (zip 25301)
        P.O. Box 11070
        Charleston, West Virginia 25339
        (304) 346-5500
        (304) 346-5515 (fax)
        daveh@handl.com