IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KATHERINE F. LEGGETT, Executrix
of the Estate of Patrick D. Leggett, et al.,

      Plaintiffs,                    Civil Action No. 1:13-cv-00004FPS
                                            (Hon. Frederick P. Stamp, Jr.)

v.

EQT PRODUCTION COMPANY, et al.,

      Defendants.

## MEMORANDUM IN SUPPORT OF EQT PRODUCTION COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant EQT Production Company ("EQT Production") submits the following Memorandum in support of its Motion for Partial Summary Judgment filed in the above-captioned action. EQT Production is entitled to summary judgment with respect to the following: (1) Plaintiffs' claim for royalties on volumes of gas that are never sold by EQT Production and for which it is never paid; (2) Plaintiffs' claim for royalties on the sale of natural gas liquids or byproducts never sold by EQT Production and for which it does not receive revenue; (3) Plaintiffs' claim that the costs taken into account in calculating their royalties are not "actually incurred"; (4) Plaintiffs' claim, if any, for a refund of their proportionate share of severance taxes; and, (5) Plaintiffs' claim, if any, remaining for fraud relating to the contract claim.

## SUMMARY OF FACTS

Plaintiffs assert that they are owners of undivided oil and gas mineral interests in approximately 2,000 acres located in Doddridge County, West Virginia. (ECF 51, ¶1). Plaintiffs' predecessors-in-interest leased the rights to produce, market, and sell their oil and gas

by a lease dated October 31, 1906 (the "Lease") which is recorded in the Office of the Clerk of the County Commission of Doddridge County at Deed Book 21, page 76. *Id*. EQT Production, as lessee, has the right to develop and produce natural gas from the Lease premises. (ECF 67, ¶ 14, EQT Production Company's Partial Answer).

Plaintiffs claim that EQT Production has underpaid the royalties owed to them for the sale of natural gas produced from the Lease premises. They argue that EQT Production "ha[s] and continue[s] to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduce[] plaintiffs' royalty on volume and/or price by taking unauthorized deductions." (ECF 51, ¶30). More particularly, they contend that they should be paid royalty based upon the volume of gas measured at the wellhead rather than the volume of gas that is actually sold, and that they should be paid royalties on the sale of natural gas liquids or byproducts that are never sold by EQT Production. (ECF 51, ¶¶30 and 31).

In their Amended Complaint, Plaintiffs asserted the following claims for relief: breach of contract (Count I), breach of fiduciary duties (Count II), fraud (Count III), and punitive damages (Count VI). They seek monetary damages and an equitable accounting. (ECF 51). This Court previously granted EQT Production Company's Motion to Dismiss (ECF 68) Plaintiffs' claim for breach of fiduciary duties and for relief under the West Virginia Consumer Protection Act. (ECF 108).[1] This Court also granted EQT Production's subsequent Motion for Summary Judgment (ECF 152) with respect to Plaintiffs' claims for fraud as a stand-alone tort and punitive damages. (ECF 174, pp. 35-37).

---

[1] Plaintiffs agreed that "it was not their intention to reference the West Virginia Consumer Credit and Protection Act and that the inclusion of a reference to said Act was an error. Accordingly, plaintiffs have no objection to the Court ordering that said reference to the CCPA be stricken from the record." (ECF 73).

There is no dispute that W. Va. Code § 22-6-8 governs the payment of Plaintiffs' royalties in this case. (ECF 174, p. 7). This Court previously stayed proceedings in this action pending rulings on questions this Court certified to the Supreme Court of Appeals of West Virginia regarding the royalty payment provision of this statute. (ECF 175). Following the issuance of the Supreme Court of Appeals of West Virginia's decision in *Leggett v. EQT Production Company*, 239 W.Va. 264, 800 S.E.2d 850 (2017), *cert. denied*, 138 S. Ct. 472, 199 L. Ed. 2d 358 (2017), this Court held a status conference in this case on June 20, 2017, at which the Court asked the parties what issues remain for trial. The parties conferred and agreed that the following issues remain for trial:

1. the actual and reasonableness of the deductions;
2. royalty payment practices regarding produced and sold volumes; and
3. royalty payment practices regarding natural gas liquids.

(ECF 201).

With respect to these issues, the undisputed evidence establishes as follows:

1. EQT pays royalties to Plaintiffs pursuant to W.Va. Code §22-6-8 on a number of wells that are located on the property covered by the Lease.

2. EQT Production sells the gas produced from the referenced wells to an affiliate, EQT Energy, LLC, at the wellhead pursuant to the terms of a Base Contract for Sale and Purchase of Natural Gas. *See* Exh. A, Base Contract for Sale and Purchase of Natural Gas.

3. The Base Contract for Sale and Purchase of Natural Gas establishes a pricing formula whereby EQT Production is paid an amount equal to the first of the month index price applicable to the interstate pipeline/gas gathering system into which the gas is delivered, less gathering-related charges, retainage, and any other agreed to charges. *Id*. According to this

contract, EQT Production is paid for gas volumes that actually reach the interstate pipeline connection. *Id*.

4. To arrive at the wellhead price for the natural gas sold from wells located on the Lease premises, the price received by EQT Production for the sale of natural gas incorporates, by contract, a work-back method whereby certain post-production expenses of gathering and compressing the gas to the downstream market are deducted from the market price of the gas sold. *Id*. *See also*, Exh. B, excerpts of the Transcript of the Deposition of Jimmi Sue Smith, p. 49; Exh. C, excerpts of the Transcript of the Deposition of Kristy Toia, pp. 23-25.[2]

5. The costs for these gathering and compression services are a component of the sales price received by EQT Production for the sale of natural gas from the Lease premises. *Id*. *See also*, Exh. B, Smith Tr., p. 49; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 5-7. These charges are then allocated back as part of the net back calculation to determine the sales price for the gas produced by EQT Production Company and sold to EQT Energy, LLC. *See* Exh. S, Smith Tr., p. 49; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 5-7.

6. EQT Production does not sell any separated natural gas liquids or other byproducts from the Lease premises or receive revenue for either. Rather, EQT Production sells natural gas in its raw or nearly raw state to EQT Energy prior to processing at a price that reflects the thermal value of the gas. *See* Exh. C, Toia Tr., p. 54; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 6-7; Exh. E, Affidavit of Jimmi Sue Smith.

---

[2] Discovery in this case, by agreement of the parties, was consolidated with discovery in *The Kay Company v. EQT Production Company*, Civil Action No. 1:13-cv-151. (ECF 233).

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may show an absence of a genuine dispute of material fact by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). The nonmoving party is required to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 325. *Accord*, *Pauley v. Combustion Eng'g, Inc.*, 528 F. Supp. 759 (S.D.W. Va. 1981); *Prete v. Royal Globe Ins. Co.*, 533 F. Supp. 332 (N.D.W. Va. 1982).

**ARGUMENT**

**A. EQT PRODUCTION OWES NO ROYALTIES TO PLAINTIFFS FOR UNSOLD GAS**

Plaintiffs erroneously contend that EQT Production has failed to pay them royalty on the correct volume of gas from the wells that are on the property covered by the subject Lease. In their Complaint, they allege that EQT Production "ha[s] and continue[s] to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge

plaintiffs, and otherwise reduce[] plaintiffs' royalty on volume …" (ECF 51, ¶30). The gist of Plaintiffs' claim is that royalty must be paid on the volume of gas measured at the wellhead, not on the gas sold. Plaintiffs are claiming entitlement to additional royalty despite the fact that W. Va. Code § 22-6-8 directs that EQT production shall pay royalty based upon the volume of gas for which it is paid, and EQT Production receives *no payment* for gas that is lost or consumed between the wellhead and the connection to the interstate pipeline. Plaintiffs' claim for additional royalty for unsold gas must fail as a matter of law.

Natural gas is typically measured at the wellhead and at several other locations as it is transferred through gathering lines to the interstate pipeline. *See* Exh. F, Affidavit of Justin Friend[3]; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 5-7. The volume of gas going into the pipeline will not exactly match the volume of gas coming out of the pipeline. Such loss may be a result of small leaks encountered during pipeline operation, dissipation or metering inaccuracies or limitations. *See, e.g., Colorado Interstate Gas Co. v. Federal Energy Regulation Commission*, 599 F.3d 698, 700 (D.C. Cir. 2010). Gas lost in this manner is known as lost and unaccounted for gas ("LUF").

W. Va. Code § 22-6-8 governs the payment of Plaintiffs' royalties in this case. With respect to the volume of gas on which royalty must be paid pursuant to this statute, W. Va. Code § 22-6-8 is clear:

> … [T[he owner of the working interest in the well … shall tender to the owner of the oil or gas in place **not less than one eighth of the total amount paid to or received by or allowed to the owner of the working interest** at the wellhead for the oil or gas so extracted, produced or marketed …

W. Va. Code § 22-6-8(e) (emphasis added). Stated simply, the clear and express provisions of W.Va. Code § 22-6-8 provide that the volume on which royalty must be paid is the volume for

---

[3] Discovery in this case, by agreement of the parties, was consolidated with discovery in *The Kay Company v. EQT Production Company*, Civil Action No. 1:13-cv-151. (ECF 233).

which the producer is paid. The language of the statute is unambiguous in this regard. Consequently, the terms of the statute should be applied as stated. *See, e.g., Syl pt. 2, Epperly*, 135 W. Va. 877, 65 S.E.2d 488 ("[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect"); *Syl. pt. 2, King*, 234 W. Va. 440, 766 S.E.2d 387 (recognizing that, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation").

Here, EQT Production does not receive any payment for unsold volumes of gas. EQT Production's gas purchase contract provides for a wellhead sale of gas at a price equal to the first of the month index price applicable to the interstate pipeline(s) into which the gas is ultimately delivered, less gathering-related charges, retainage, and any other agreed to charges. *See* Exh. A. Pursuant to this contract, EQT Production is paid for gas volumes that actually reach the interstate pipeline connection. *Id*. As directed by W. Va. Code § 22-6-8, EQT Production is required to pay – and has paid – Plaintiffs a royalty of "not less than one eighth of the total amount paid to or received by" it "at the wellhead for the oil or gas so extracted, produced or marketed …" for each well drilled or reworked after the enactment of W. Va. Code § 22-6-8.

Plaintiffs' demand that EQT Production pay royalties on unsold gas is illogical and inequitable as was recently found by the court in the case styled: *W.W. McDonald Land Co. v. EQT Production Company, et al*., Civil Action No. 2:11-cv-00418, previously pending in the U.S. District Court for the Southern District of West Virginia. In *W.W. McDonald*, EQT Production moved for summary judgment with respect to the plaintiffs' claims that they should be paid royalties on the volume of unsold gas that is lost or unaccounted for while being gathered, compressed and transported through gathering lines and to the distribution system into

which it is ultimately delivered. In the Memorandum Opinion and Order dated November 21, 2013, the Honorable Joseph R. Goodwin ruled that the producer (EQT Production Company) was not required to pay royalty on volumes of gas that were never sold.  Specifically addressing the issue of whether EQT Production was required to pay royalties on gas that is never sold, the court found that "lessees have no general duty to pay for lost volumes."  *See* Exh. G, Memorandum and Opinion Order, p. 15.  According to the court, "it is "illogical and inequitable" to require lessees "to pay royalties on unsold gas."  *Id.*  The court went on to say that volume loss is not the same as a "deduction" of costs, because there is no "starting value" from which to take a deduction:

> The lessee does not receive payment for lost and unaccounted for gas that is not delivered to the market. Rather, the lessee receives payment only for gas that is actually sold. Therefore, when the lessee pays a royalty on those proceeds, there is nothing to deduct; the lessee was never paid for undelivered volumes of gas.

*Id.*

Imposing an obligation on EQT Production to pay royalty on volumes of gas that are lost and/or never sold is even more illogical here, because the Lease provides for a flat-rate royalty and the parties never valued gas volume. The Lease does not even impose an obligation on the part of the lessee to produce gas. *See e.g. Bruen v. Columbia Gas Transmission Corp.*, 188 W. Va. 730, 426 S.E.2d 522 (1992) (recognizing that the lessee of a flat well royalty lease has no duty to produce gas as the "rental bears no relation to the quantity of gas contemplated or actually produced"); *Wellman v. Bobcat Oil & Gas, Inc.*, 524 Fed. Appx. 26 (4th Cir. 2013) (applying West Virginia law, and holding that, because the lease at issue provided for the payment of a flat-rate rental, "the quantity of production—whether high, low, or zero—[was] utterly irrelevant for determining whether the secondary term of the Lease *expired* … assuming the [rental] payments" were made).  The West Virginia Legislature's remedy to the flat well

royalty was to impose a royalty equivalent to 1/8 of the sales price at the wellhead, not to mandate a payment of more than 1/8 of the price received, which would be the result if royalties were paid on higher volumes than those volumes for which the lessee actually received payment.

Here, there is no dispute that EQT Production has paid Plaintiffs a royalty of not less than 1/8 of the total amount paid to and received by EQT Production at the wellhead for the oil and gas extracted and sold from the wells covered by the subject Lease. Having been paid royalty in the amount and based upon the volume plainly directed by W. Va. Code § 22-6-8, Plaintiffs have been fully compensated for royalties owed, and EQT Production is entitled to judgment on Plaintiffs' claim for breach of contract with respect to alleged unpaid royalties on volumes of gas that are never sold by EQT Production and for which it is never paid.

**B.   NO SEPARATE ROYALTY IS DUE FOR NATURAL GAS LIQUIDS OR BYPRODUCTS**

Summary judgment in favor of EQT Production on Plaintiffs' claim for the payment of royalties relating to the sale of natural gas liquids or byproducts is also proper. The undisputed evidence in this case establishes that EQT Production sells gas at or near the wellhead before processing or separation of any natural gas liquids or byproducts, and does not sell any natural gas liquids or byproducts from the Lease premises. *See* Exh. C, Toia Tr., p. 54; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 6-7; Exh. B, Smith Aff. The evidence further establishes that EQT Production does not receive any revenue for natural gas liquids or byproducts. Rather, EQT Production sells natural gas in its raw or nearly raw state to EQT Energy, LLC prior to processing at a price that reflects the thermal value of the gas. *Id*. There is, therefore, no valid basis upon which to impose any obligation on EQT Production, as lessee, to pay royalties for something that it neither produces nor sells.

Plaintiffs' argument that EQT Production should pay royalties on natural gas liquids or byproducts that may be separated and sold by EQT Energy, LLC must be rejected. This Court previously granted the Motion for Summary Judgment filed by EQT Energy, LLC and the other "Non-Lessee Defendants," ruling that Plaintiffs' breach of contract claims against EQT Energy, LLC – including those for the failure to pay royalties on natural gas liquids or byproducts – "fall[] short" because:

> (1) the non-lessee defendants [including EQT Energy, LLC] are not signatories to the 1906 lease and amendment agreements at issue; (2) the plaintiffs' agency and conspiracy theories fail as a matter of law; and (3) the non-lessee defendants are not 'alter-egos' of EQT.

(ECF 174, pp. 10-11). Thus, in keeping with this Court's prior rulings in this case, while EQT Energy, LLC may be an affiliate of EQT Production, both operate as separate and distinct businesses and there is no valid basis upon which to ignore the corporate structures of EQT Production and EQT Energy, LLC. (ECF 174, pp. 10-18, 21). *See also*, *Tucker v. Thomas*, 853 F. Supp.2d 576, 590 (N.D.W. Va. 2012), *citing*, Syl. pt. 1 and 2, *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 347, 352 S.E.2d 93, 97 (1986) (recognizing that, "[a]s a general rule, corporations are considered wholly separate entities from each other and from those who own them"). In fact, the undisputed evidence establishes that revenues from the sale of natural gas liquids belong to EQT Energy, LLC and EQT Production does not receive revenues from these sales. Kristy Toia, Director of Revenue Accounting at EQT Production, testified as follows:

> **Q. Q. We talked earlier about the liquids and how they were accounted for, and are there any -- are the -- I take it that that particular section, I think you indicated, was under your administration, correct?**
>
> A. Correct.
>
> **Q. Are the royalty owners paid any money for those liquids?**
>
> A. No, they are not. They are paid under each -- I'm sorry. Revenue is received by EQT Energy, which is separate from EQT Production.

> **Q. So EQT Energy gets all the moneys from sale of liquids?**
>
> A. Correct. And all the costs associated with those processing those liquids.

*See* Exh. C, Toia Tr., p. 54.

Moreover, the market price upon which EQT Production is paid for gas sold from the Lease premises is based upon the volume of gas that is sold and reflects the thermal (Btu) value of that gas. *See* Exh. C, Toia Tr., p. 54; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 6-7; Exh. E, Smith Aff. Plaintiffs share in the higher price that is received for the sale of gas that considers this thermal value. If royalty payments were made based on the thermal value of the gas (upon which Plaintiffs' royalties are calculated) *and* based on the value of separated natural gas liquids (separation and sales that EQT Production never makes), a double payment for the liquids would result. This would provide Plaintiffs with an inequitable windfall and with royalties that are not contemplated by the terms of the Lease or W. Va. Code § 22-6-8. If a separate payment for liquids or byproducts were received, processing charges incurred to separate the natural gas liquids would also need to be deducted from the price received by EQT Production, thereby reducing the amount payable as royalty. Plaintiffs actually benefit by receiving the thermal value of the gas before any of the costs associated with separation have been incurred. *See* Exh. C, Toia Tr., p. 54.

Plaintiffs have received a royalty for the natural gas liquids or byproducts that are in the gas stream at the time of the sale but do not receive a separate royalty for products that EQT Production never sells, for which it receives no revenue, and is not provided for in the Lease or W. Va. Code § 22-6-8. Accordingly, Plaintiffs' claim for the payment of royalties on the sale of such products must fail as a matter of law.

C.     **THE UNDISPUTED FACTS ESTABLISH THAT THE POST-PRODUCTION COSTS AT ISSUE WERE "ACTUALLY INCURRED" BY EQT PRODUCTION**

EQT Production is entitled to summary judgment on the issue of whether the post-production costs to gather and compress the natural gas from the Lease premises to the interstate pipeline (and which are a component of the price received by EQT Production for the sale of natural gas) were actually incurred.

In *Leggett v. EQT Production Company*, 239 W.Va. 264, 800 S.E.2d 850 (2017), the Supreme Court of Appeals of West Virginia held that:

> **[R]oyalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro-rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee**. Therefore, an oil or gas lessee may utilize the 'net-back' or 'work-back' method to calculate royalties owed to a lessor pursuant to a lease governed by West Virginia Code § 22-6-8(e). **The reasonableness of the post-production expenses is a question for the factfinder**.

*Id*. at Syl. pt. 8 (emphasis added). Accordingly, where, as here, the deduction or allocation of post-production costs is permitted, there are there are two different prerequisites for taking deductions: (1) that the costs were actually incurred, and (2) that they were reasonable. *Leggett*, 239 W. Va. at 273, 800 S.E.2d at 859.

This Court recently recognized these prerequisites the case styled: *Fout v. EQT Production Company*, Civ. Action No. 1:15cv68, U.S. District Court for the Northern District of West Virginia (the "*Fout* case"). As here, the *Fout* case involved claims concerning the payment of royalties pursuant to W. Va. Code § 22-6-8. There, after the ruling on the certified questions in *Leggett v. EQT Production Company*, 239 W.Va. 264, 800 S.E.2d 850 (2017), *cert. denied*, 138 S. Ct. 472, 199 L. Ed. 2d 358 (2017), and upon agreement of the parties, this Court directed that the sole remaining issues to be decided in that case were whether the post-

production expenses allocated to Plaintiffs on a pro-rata basis were actually incurred and reasonable. (*Fout* case, ECF 43 and ECF 169).

Plaintiffs' challenges to the post-production costs at issue in this case go to the reasonableness of those deductions, which is an issue for the factfinder. *See, Leggett*, 239 W. Va. at 282, 800 S.E.2d at 868. ("The reasonableness of the post-production expenses is a question for the fact-finder"). Here, EQT Production moves for summary judgment on (1) the meaning of "actually incurred," and (2) for a determination that that all costs which are deducted are "actually incurred" costs.

West Virginia law is clear that, in order to deduct post-production costs from a lessor's royalty, the **lessee** must have "actually incurred" such costs:

> [R]oyalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro-rata deduction or allocation of all reasonable post-production expenses **actually incurred by the lessee**.

Syl. pt. 8, *Leggett*, 239 W.Va. 264, 800 S.E.2d 850 (emphasis added). Notably, the court did not apply a different standard where affiliate transactions are at issue. *Id*. There is, therefore, no basis upon which to find that the analysis regarding whether costs are actually incurred by the lessee should vary when affiliated entities are involved.[4]

The undisputed evidence in this case establishes that the price paid to EQT Production for the sale of natural gas from the Lease premises is the amount equal to the first of the month index price applicable to the interstate pipeline/system into which the natural gas is delivered, less gathering-related charges, retainage, and any other agreed to charges. *See* Exh. A, Base Contract for Sale and Purchase of Natural Gas. To arrive at the wellhead price for the natural gas sold from wells located on the Lease premises as is permitted by West Virginia law, the price

---

[4] Indeed, this Court previously dismissed Plaintiffs' alter ego claims in this case. (ECF 175, pp. 16-18).

received by EQT Production for the sale of natural gas incorporates, by contract, a work-back method whereby certain post-production expenses of gathering and compressing the gas to the downstream market are deducted from the market price of the gas sold. *See* Exh. B, Smith Tr., p. 49; Exh. C, Toia Tr., pp. 23-25; Exh. D, EQT Production Company's Responses to Plaintiffs' First Set of Interrogatories, pp. 5-7. The costs for these services are actually incurred because they are a component of the sales price received by EQT Production for the sale of natural gas from the Lease premises. *Id*.

The testimony of Plaintiffs' expert, Daniel Reineke, supports this finding. He testified that, "if a lease allows for deductions and meets the requirements that are listed by Tawney and Wellman then whether it is an affiliate or not an affiliate to me seems to be immaterial. It just – it can be deducted." Exh. H, Reineke Depo, p. 130. Further, when asked what "actual" means, he testified as follows:

> Q: Okay. You were asked a question about what actual and reasonable meant. Would you agree that . . . the word "actual" reflects that it is an expense actually that is being paid by the producer to the company that's doing the transportation on the gathering system?
>
> A. Actually incurred, I believe, is the language, and that would be money changing hands?
>
> Q. Yes.
>
> A. Right. Somebody writing somebody a check.

*See* Exh. H, Reineke Depo., pp. 170-71. Although Mr. Reineke was speaking in terms of deductions permitted by lease terms, the testimony is equally related to deductions permitted by W. Va. Code § 22-6-8 and applicable law.

Further, as illustrated in EQT Production's experts' reports, they undertook a painstaking analysis which leads to the conclusion that all of the costs associated with transporting the gas at

issue were actually incurred. *See* Exh. I, Reports of Stephen Becker and Kyle Pearson. Dr. Becker, showed that "the gathering rates charged to the royalty interest owners who incurred any deductions in their royalty payments were reasonable in light of actual costs and volume throughput." Exh. I, Report of Stephen Becker, ¶101. Further, Dr. Becker has confirmed that the costs were actually incurred to transport the gas to market. *Id.* at ¶¶ 40, 45. Dr. Becker explained, that, in reality, "[e]ven if one were to remove the rate of return (measured utilizing EQT's actual weighted average cost of capital) from the actual costs, over the period from 2009 to 2016, EQT clearly under-recovered its actual costs as demonstrated in Exhibit SLB-6 and Exhibit SLB-7." *See id.* ¶ 45 and Exhibit SLB-6 and SLB-7.

Conversely, Plaintiffs' experts, in their bare bones reports, have generally claimed that the gathering charges used in calculating Plaintiffs' royalties were not "actual and reasonable." *See* Exh. J, Plaintiffs' Expert Reports. They provide, however, no analysis to support their conclusion, and their opinions must be rejected.

Regardless of whether an affiliated entity or an unaffiliated entity gathers and transports the produced gas, costs will be incurred. As long as those costs are actually incurred by the lessee and are reasonable, lessors are required to bear part of those costs. *See*, Syl. pt. 8, *Leggett*, 239 W.Va. 264, 800 S.E.2d 850. Oil and gas producers have to pay someone to gather and transport gas, and they should not be placed in a worse position for using an affiliate entity if the gathering rate is reasonable, and not in excess of what a third-party would charge. Moreover, in this case, Plaintiffs have not provided any factual support for their contention that the gathering fee does not constitute true, actual costs to transport the gas at issue. Accordingly, summary judgment should be entered that the costs associated with Plaintiffs' royalty deductions were actually incurred.

### D.    EQT PRODUCTION IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF SEVERANCE TAXES

EQT Production is entitled to summary judgment on any claim Plaintiffs are asserting with regard to a refund of their proportionate share of severance taxes because (1) they did not assert such a claim in the Amended Complaint; and (2) the amounts allocated to lessors were actually incurred and reasonable as a matter of law.

Daniel Reineke, one of Plaintiffs' designated expert witnesses, without any explanation or factual support whatsoever, includes a damage component in his damage calculations for "severance taxes." See Exh. J, Report of Daniel Reineke. Although there is no discussion as to the manner in which the component for severance taxes was determined, and the calculations are not specifically related to the Plaintiffs' claims in this case (as opposed to the claims of the plaintiffs in The Kay Company v. EQT Production Company, Civil Action No. 1:13-cv-151, which was consolidated with this case for discovery purposes (ECF 233)), Plaintiffs may presumably attempt to assert a claim for refund of their proportionate share of severance taxes here. The Plaintiffs cannot make this claim, however, because it was not asserted in the Amended Complaint and they cannot now belatedly assert such a claim. In *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976 (4th Cir. 2015), the Fourth Circuit affirmed a decision of the United States District Court for the Northern District of West Virginia holding that a party is precluded from pursuing a claim which is not raised in the party's pleadings. Plaintiffs never pled a claim for refund of their proportionate share of severance taxes, and EQT Production is entitled to summary judgment to the extent that Plaintiffs now attempt to assert such a claim.

Even if Plaintiffs are permitted to assert a belated claim for refund of severance taxes, their claim is without merit. In *Fout v. EQT Production Company*, Civil Action No. 1:15CV68,

[*Fout*, ECF 157], (N.D. W. Va. Apr. 5, 2018), this Court held that "the issue of deducting severance taxes is commensurate with the defendant's burden of proving by a preponderance of the evidence whether the deductions of post-production expenses were reasonable and actually incurred." *Id*. *See also, Fout v. EQT Prod. Co*., No. 1:15CV68, 2018 WL 3596041, at *2 (N.D.W. Va. July 26, 2018) (finding that judgment on severance taxes should not be altered or amended).

Moreover, the amount of severance tax assessed is statutorily set by W. Va. Code, § 11-13A-5a, and is therefore reasonable as a matter of law. Further, each lessor's proportionate share of severance taxes was actually paid to the West Virginia State Tax Department. Consequently, this Court should grant EQT Production's motion for summary judgment because there is no genuine issue of material fact, and EQT Production is entitled to judgment as a matter of law that any severance taxes allocated to Plaintiffs were actually incurred and reasonable.

### E. THERE IS NO BASIS UPON WHICH TO PERMIT PLAINTIFFS TO PROCEED WITH A FRAUD CLAIM

In the Memorandum Opinion and Order granting, in part, EQT Production's Motion for Summary Judgment (ECF 174), this Court granted EQT Production's Motion as to Plaintiffs' fraud claim "to the extent the fraud claim is asserted as a 'stand-alone' tort claim." (ECF 174, pp. 35-36). The Order further states that this "ruling does not apply to the extent that the plaintiffs may assert fraudulent conduct by EQT in relation to the breach of contract if the breach of contract claim is found to be viable following the certification to the Supreme Court of Appeal of West Virginia." (ECF 174, pp. 35-36).

Given the Supreme Court of Appeals of West Virginia's rulings in *Leggett v. EQT Production Company*, 239 W.Va. 264, 800 S.E.2d 850 (2017), *cert. denied*, 138 S. Ct. 472, 199 L. Ed. 2d 358 (2017), there is no basis upon which Plaintiffs may proceed with a fraud claim

connected to their breach of contract claim. (ECF 174, FN5, p. 136). Further, according to the parties' agreement and this Court's Order identifying the three remaining issues for trial, fraud is not an issue remaining for trial. (ECF 201). Indeed, Plaintiffs' fraud claims arise solely from their contractual relationship with EQT Production (i.e. the Leases at issue) and are barred by the "gist of the action" doctrine. *See e.g.*, *Corder v. Antero Resources Corporation*, No. 1:18cv30, 2018WL2925128, *10 (N.D.W. Va. June 11, 2018)[5]; *Cochran v. Appalachian Power Co*, 162 W.Va. 86, 246 S.E.2d 624, 628 (1978); *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 746 S.E.2d 568, 586 (2013). There is, therefore, no valid basis upon which Plaintiffs may proceed with a claim for fraud.

## CONCLUSION

For all the foregoing reasons, the following claims should be dismissed as a matter of law: (1) Plaintiffs' claim for royalties on volumes of gas that are never sold by EQT Production and for which it is never paid; (2) Plaintiffs' claim for royalties on the sale of natural gas liquids or byproducts never sold by EQT Production and for which it does not receive revenue; (3) Plaintiffs' claim that the costs taken into account in calculating their royalties are not "actually incurred"; (4) Plaintiffs' claim, if any, for a refund of their proportionate share of severance taxes; and, (5) Plaintiffs' claim, if any, remaining for fraud relating to the contract claim.

**EQT PRODUCTION COMPANY,**
**By Counsel.**
*/s/ David K. Hendrickson       09/14/2018*
David K. Hendrickson, Esquire (#1678)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia 25339
(304) 346-5500; (304) 346-5515 (facsimile)
daveh@handl.com

---

[5] A copy of this Opinion is attached hereto as Exh. K.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KATHERINE F. LEGGETT, Executrix
of the Estate of Patrick D. Leggett, et al.,

      Plaintiffs,                    Civil Action No.  1:13-cv-00004FPS
                                              (Hon. Frederick P. Stamp, Jr.)

v.

EQT PRODUCTION COMPANY, et al.,

      Defendants.

## CERTIFICATE OF SERVICE

I, David K. Hendrickson, counsel for Defendants, do hereby certify that on the **14th day of September, 2018**, I have served the foregoing **"MEMORANDUM IN SUPPORT OF EQT PRODUCTION COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT"** using the Court's CM/ECF filing system which will deliver a true copy thereof to counsel of record listed below:

| | |
|---|---|
| Marvin W. Masters, Esquire (#2359) | Michael W. Carey, Esquire (#635) |
| THE MASTERS LAW FIRM, LC | CAREY, SCOTT, DOUGLAS & KESSLER, PLLC |
| 181 Summers Street | Suite 901 |
| Charleston, West Virginia   25301 | 707 Virginia Street East |
| *Counsel for Plaintiffs* | Charleston, West Virginia   25301 |
| | *Counsel for Plaintiffs* |

                                      */s/  David K. Hendrickson       09/14/2018*
                                      David K. Hendrickson, Esquire (#1678)
                                      **HENDRICKSON & LONG, PLLC**
                                      214 Capitol Street (zip 25301)
                                      P.O. Box 11070
                                      Charleston, West Virginia 25339
                                      (304) 346-5500
                                      (304) 346-5515 (facsimile)
                                      daveh@handl.com